UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>COREY L. JOHNSON, *et al.*,<br><br>      Defendants. | Case No. 2:12-CV-00209-KJD-PAL<br><br>**ORDER** |

      Before the Court is Defendant Douglas E. French's Motion to Dismiss (#32). Plaintiff Federal Deposit Insurance Corporation ("FDIC") has filed a response (#43) and French has filed a reply (#48).

      Also before the Court is Defendant Timothy S. Kirby's Motion to Dismiss and Motion to Strike (#38) to which the FDIC has filed a response (#47) and to which Kirby has filed a reply (#49). The FDIC also filed a Motion for Leave to File a Surely (#50) and Kirby filed an opposition (#51).

Also before the Court is Defendant Carey L. Johnson's Motion for Summary Judgment (#59). The FDIC has filed a response (#65) and Johnson has filed a Reply (#66).

I.  Legal Standard for Motion to Dismiss

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). "Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citation omitted).

In Iqbal, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 680.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id. at 679.  Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 680.  A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 680.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." Id. (internal quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. Twombly, 550 U.S. at 570.

Federal procedural law holds that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be

considered in ruling on a Rule 12(b)(6) motion to dismiss." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994) (specifically holding that such considerations do not convert a motion to dismiss into a motion for summary judgment)(overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.2002)).

II.  French's Motion to Dismiss

     A.  Background

According to the Complaint, French was hired by Silver State Bank ("SSB") in 1997 as Executive Vice-President for Real Estate Lending.  French was placed in charge of SSB's acquisition, development, and construction ("ADC") loan program.  The FDIC alleges that French's management of the ADC program, including failure to follow SSB's loan approval process, led to massive losses.

French resigned from SSB in May, 2008.  At the time of his resignation, French signed a Settlement Agreement and General Release (the "Settlement Agreement") in which the parties waived:

> [A]ny right to bring or pursue any lawsuit or administrative proceeding, upon any claims which may exist against the other Party regarding any matter arising on or before the date of execution of this Agreement including claims with respect to Douglas French's employment with and/or separation from employment with the Bank.

The Settlement Agreement's release further specified that it related to any and all potential claims including negligence or intentional acts.  The Settlement Agreement also provided for $130,000 to be paid to French and contained a severability provision.

The Nevada Financial Institutions Division closed SSB and appointed the FDIC as receiver on September 5, 2008.  On December 3, 2008, the FDIC sent French a letter in which it stated that it had "determined that the above-described Settlement Agreement is burdensome and that the repudiation or disaffirmance of said Settlement Agreement will promote the orderly administration of the Institution's affairs."  The FDIC asserted that it repudiated the Settlement Agreement "to the full extent, if any, that it represents an enforceable obligation of the Institution or the Receiver."

1  Defendant French now moves to dismiss this action, arguing that the FDIC remains bound by
2  the Settlement Agreement's release of the right to pursue a lawsuit against him.  French further
3  argues that the FDIC's gross negligence and breach of fiduciary duty claims are duplicative and that
4  the breach of fiduciary duty claim should be stricken.

5  <u>C. Repudiation of the Contract</u>

6  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12
7  U.S.C. 1821(e)(1), empowers the FDIC to repudiate any contract (1) to which the institution is a
8  party, (2) the performance of which the conservator or receiver, in the conservator's or receiver's
9  discretion, determines to be burdensome, and (3) the disaffirmance or repudiation of which the
10 conservator or receiver determines, in the conservator's or receiver's discretion will promote the
11 orderly administration of the institution's affairs.

12  1.  <u>Repudiation of the Release</u>

13  French argues that the FDIC only intended to repudiate the severance payment, and not the
14 wavier.  French argues that the letter repudiating the Settlement Agreement (the "Letter") only
15 repudiated it "to the full extent, if any, that it represents an enforceable obligation of the Institution or
16 the Receiver."  According to French, since the release is not an obligation, the FDIC did not
17 repudiate it.

18  The FDIC argues that it repudiated the entire Settlement Agreement.  Specifically, the FDIC
19 points to the subject line of the Letter which states: "Repudiation of Settlement and General Release
20 dated May 23, 2008, between Douglas E. French and Silver State Bank."

21  The Letter does not clearly state that repudiation only applies to certain portions of the
22 Settlement Agreement.  The Court cannot say that the FDIC has failed to allege plausible facts
23 showing that it repudiated the release. Accordingly, the Court will not grant the Motion to Dismiss
24 on this basis.

25
26

4

2. Repudiation of Nonexcuatory Contract

§1821(e)(1) gives the FDIC authority to repudiate "any contract." However, at least one court has held that this authority only extends to executory contracts – those under which neither party has performed his obligation. See LaMagna v. F.D.I.C., 828 F.Supp. 1, 2 (D.D.C.1993). Ninth Circuit law does not address this question directly, but the Third Circuit has expressly rejected LaMagna's holding and held that the "conclusory holding that § 1821(e) does not permit the receiver to repudiate a 'nonexecutory' contract lacks support in both the statutory language and the case law. As many courts have noted, the statute explicitly provides that a conservator or receiver 'may disaffirm any contract or lease,' not just executory contracts." Hennessy v. F.D.I.C., 58 F.3d 908, 919 n. 8 (3d Cir.1995) (citing Empl. Ret. Sys. of Ala. v. Resolution Trust Corp., 840 F.Supp. 972, 984 (S.D.N.Y.1993)). The most recent court to address this issue has held that "under FIRREA, the FDIC's power to repudiate is not limited to executory contracts." Burris v. F.D.I.C., 2011 WL 833270, 1(E.D.Wis. 2011) (citing Hennessy, 58 F.3d at 919).

According to French, the statutory language stating that FDIC may only repudiate contracts "the *performance* of which" the receiver determines to be burdensome, creates a distinction between executory and nonexecutory contracts. French argues that the FDIC cannot repudiate the mutual release provision of the Settlement Agreement because the release was already performed. However, the weight of authority suggests that the FDIC can repudiate both executory and nonexecutory contracts. Further, French does not dispute the FDIC's authority to repudiate the severance provision of the contract. SSB agreed to pay severance in "exchange for the release and promises contained in this Settlement Agreement and General Release, and in full settlement of all claims." French provides no authority indicating that a mutual release can be severed from the consideration provided for the release.[1] Accordingly, the Motion to Dismiss based on ineffective repudiation fails.

---

[1] The Seventh Circuit has supported a district judge's determination that only "whole contracts" can be repudiated and indicated skepticism that § 1821(e) allows "cherry-picking" certain provisions of contracts. Federal Deposit Ins. Corp. v. Ernst & Young, LLP, 374 F.3d 579, 584 (7th Cir. 2004).

5

D.  Duplicative Claims

Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." French argues that the breach of fiduciary duty and gross negligence claims are duplicative and that the breach of fiduciary duty claim should be stricken because there is no indication that Plaintiffs are pleading in the alternative.  In support of this contention, French cites F.D.I.C. v. Saphir,  2011 WL 3876918, (N.D.Ill. 2011).  Saphir does not support French's argument because the Court allowed both breach of fiduciary duty and gross negligence claims to proceed.  See Id. at *9 (striking negligence claim as duplicative).

Plaintiff correctly argues that the elements of proof for the breach of fiduciary duty and gross negligence claims are different, that different duties apply to each claim, and the gross negligence claim arises under federal law.  Accordingly, the court will not strike the breach of fiduciary duty claim and French's Motion is denied.

III.  Kirby's Motion to Dismiss and Motion to Strike

A.  Background

Defendant Kirby was employed as a commercial loan officer with Choice Bank ("Choice") when it was acquired in September 2006 by Silver State Bancorp, a holding company that owned SSB.  In December 2006, Kirby was promoted to Vice President, Commercial Real Estate.  Kirby held this position until he was terminated April 2008.  Kirby was involved with four loans which are at issue in this case.

B.  Status as an Officer or Director

FIRREA provides that:

> A *director or officer* of an insured institution may be held personally liable for monetary damages in any civil action by . . . for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law.

12 U.S.C. § 1821(k) (emphasis added).

6

FIRREA also provides that:

> The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to (I) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and assets of the institution.

12 U.S.C. § 1821(d)(2)(A)(I). "As the receiver, the FDIC possesses all the rights of the Bank's shareholders, including the right to sue directors and officers." F.D.I.C. v. American Cas. Co. of Reading, Pa., 998 F.2d 404, 409 (7th Cir. 1993).

FIRREA does not define the terms "director or officer." In the securities and bankruptcy context, courts have indicated that "[a]n individual's title, by itself, is insufficient to establish that an individual is a director or officer." In re Borders Group, Inc., 453 B.R. 459, 468-69 (Bankr. S.D.N.Y. 2011). According to Black's Law Dictionary, an "officer" is defined as a "person elected or appointed by the board of directors to manage the daily operations of a corporation, such as the CEO, president, secretary, or treasurer." In other contexts, such as the Clayton Act, an officer is defined as "an officer elected or chosen by the Board of Directors." See 15 U.S.C. § 19(a)(4). Similarly, the Model Business Corporation Act ("MBCA"), adopted by the American Bar Association, defines "officer" as a position "described in [the corporation's] bylaws or appointed by the board of directors in accordance with the bylaws." Model Bus. Corp. Act § 8.40 (2002).

Kirby argues that, under the "careful analysis required by FIRREA" he is not an officer or director and, as a matter of law, cannot be held liable as such. However, he has failed to cite any cases outlining a unique analysis to be used when interpreting these terms in FIRREA. In the absence of such authority this Court will consider the general usage of these terms to determine whether it must conclude, as a matter of law, that Kirby was not an officer or director under FIRREA.

Kirby argues that he was not an officer because the board never held a formal, individual, vote to elect him an officer under the corporate bylaws. However, nothing in FIRREA suggests that only officers elected through a specific procedure can be held personally liable to the FDIC. Kirby

7

was hired in June 2006 as an Assistant Vice-President and Loan Officer.  In December of 2006, he was appointed to be Vice-President, Commercial Real Estate.  This appointment was confirmed by the Board of Directors as an officer-level appointment.  In 2007, the Board of Directors voted on and passed a resolution approving a corporate structure, which included Kirby as an officer.[2]  Kirby had employees reporting to him, managed a portfolio of over $200 million, and was paid $271,361.62 in 2007.  Based on this information, the Court cannot conclude as a matter of law that Kirby was not an officer or director pursuant to § 1821(k).

Kirby also argues that he cannot be held liable under § 1821(k) because he was a Vice-President and Loan Officer of Choice, and the FDIC is the receiver for SSB.  Choice and SSB were owned by the same single shareholder, Silver State Bancorp.  During Kirby's tenure, Choice was in the process of merging with SSB.  Kirby cites no authority for his argument that a merger prevents the FDIC from suing the officers of the dissolved corporation under § 1821(k), for acts which gave rise to liabilities and losses at the institution ultimately taken over by the FDIC.  Further, the FDIC has all rights that Silver State Bancorp would have had against Choice or SSB.  Kirby's arguments fail to show, as a matter of law, that he was not an officer or director.

### D.  Failure to State a Claim against Kirby

Kirby argues that the Complaint fails to plead facts sufficient to raise an inference of liability.  Specifically, Kirby argues that the complaint fails to adequately plead Kirby's status as an officer, breach of fiduciary duty, and gross negligence.

#### 1.  Kirby's Status as an Officer

As discussed previously, FIRREA permits suits against directors and officers of failed banks.  See 12 U.S.C. § 1821(k).  Kirby argues that the Complaint fails to allege sufficient facts showing that

---

[2] The FDIC has submitted documents to support these allegations.  Neither party has contested the authenticity of the documents submitted by the FDIC and neither party argues that this motion should be converted to a motion for summary judgment.  Courts may consider corporate governance documents in resolving a motion to dismiss without converting it to a motion for summary judgment.  See, e.g., In re Bidz.com, Inc. Deriv. Litig., 773 F. Supp. 2d 844, 855 (C.D. Cal. 2011).

he was an officer or director of the corporation. The Complaint alleges that Kirby was an officer. It further states that Kirby was a Vice President and Commercial Loan Officer, that he managed a loan portfolio of over $200 million, and was involved in the approval an disbursement of loans. Kirby has cited no authority indicating that FIRREA requires a heightened level of pleading to show that an individual was an officer. Given the liberal pleading standards of the Federal Rules, and the applicable motion to dismiss standard, the Court can "draw a reasonable inference" from the allegations of the Complaint that Kirby was an officer. Iqbal, 556 U.S. at 678 (citation omitted).

### 2. Breach of Fiduciary Duty

Kirby's next argument is that the Complaint lacks facts showing that he had a fiduciary duty to his employer because he was a "mere employee." However, because the Court has already held that the Complaint plausibly alleges that he was an officer, it need not allege further facts showing that he owed a fiduciary duty to the bank.

### 3. Gross Negligence

To recover in an ordinary negligence action, a plaintiff must demonstrate 1) defendant owed plaintiff a duty of care, 2) defendant breached that duty, 3) that breach of duty caused harm to plaintiff that was reasonably foreseeable, and 4) damages. Butler ex. rel. Biller v. Bayer, 168 P.3d 1055, 1065 (Nev.2007). "Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a prudent man" and the difference between ordinary negligence and gross negligence is that they "differ in the degree of intention." Hart v. Kline, 61 Nev. 96, 116 P.2d 672-674 (1941).

Kirby argues that, since the loans were subject to approval by the Senior Loan Committee, Kirby could not have been negligent, let alone grossly negligent. Kirby cites no law supporting this argument.

The Complaint pleads facts sufficient to plausibly suggest a claim for gross negligence. For example, the Complaint makes allegations regarding a $20,145,000 loan to Happy Valley 160, LLC, which was originated and recommended by Kirby. The Complaint alleges that Kirby recommended

this loan in spite of knowledge that it was not viable, made misrepresentations regarding the loan, and admitted that he did not verify borrower assets prior to loan approval, contrary to bank policy. The complaint also states similar facts about other bad loans involving Kirby, including Tangelo Avenue, LLC and Carefree Equestrian. It is plausible that if these facts are proven, they could give rise to liability for gross negligence. Accordingly, the Motion to Dismiss is denied.

### E. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." See also In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 432-33 (9th Cir. 2011) (holding that Bankruptcy Court erred in not granting motion to strike allegations of sexual abuse). However, Rule 12(f) is not an appropriate avenue to challenge the truth of an allegation. See Manuel v. Lucenti, 2004 WL 2608355, *3 (N.D. Ill. 2004) (stating that "Defendants therefore are moving to strike the disputed paragraphs from plaintiffs' complaint on the basis that it is highly improbable that the allegations are true, but Rule 12(f) is not the appropriate mechanism to request such relief") see also Boyd v. U.S., 861 F.2d 106, 109 (5 th Cir. 1988) ("falsity of a pleading does not provide sufficient basis for granting motion to strike under Rule 12(f)"))

The Complaint alleges, in part, that Mr. Kirby was "soon so stressed by his own incompetence . . . that he began abusing drugs and finally had a nervous breakdown—but not before his incompetence resulted in major losses to the Bank." Kirby argues that this allegation should be stricken because it is immaterial, impertinent or scandalous. The Court cannot say that these allegations are immaterial or impertinent to the claim that the FDIC suffered losses because Kirby was incompetent in performing his duties to the bank. Further, although these allegations are unpleasant, there is no indication that these facts were included in the complaint to scandalize Kirby. Accordingly, the Motion to Strike is denied.

## IV.  Johnson's Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

1  bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted
2  if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

3      B. Background

4      Johnson is a former director of SSB.  He, like the other Defendants, is being sued for gross
5  negligence and breach of fiduciary duty, in connection with the failure of SSB.  Johnson was covered
6  under a directors and officers insurance policy (the "Policy") issued by Progressive Insurance Co.
7  Progressive filed a separate action (the "Declaratory Action") in this Court, seeking a deceleration
8  that, among other things, the Policy's "Loan Loss Exclusion" did not cover losses of "any unpaid,
9  unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of
10 debt." See Progressive Casualty Insurance Company v. Federal Deposit Insurance Corporation,
11 2:12-cv-00665-KJD-PAL.

12     C.  Discussion

13     As stated above, a negligence claim requires that Plaintiff show a duty of care, a breach of
14 that duty, foreseeable harm cased by the breach, and damages. Butler, 168 P.3d at 1065. (Nev.2007).
15 Gross negligence requires a showing of a smaller degree of watchfulness and greater intention.  Hart,
16 116 P.2d at 672-674.

17     Johnson argues that summary judgment should be granted because the FDIC stated in the
18 Declaratory Action that it "does not sue for any unpaid, unrecoverable, or outstanding loan or
19 extension of credit to a consumer."  Johnson claims that "as a matter of law, since the FDIC has
20 admitted ... that it is not seeking to recover for loan loss, then it has no damages."

21     The FDIC argued in the Declaratory Action that the Loan Loss Exclusion does not apply
22 because it is seeking compensatory damages for negligence and breach of fiduciary duty by the
23 Defendants.
24 //
25
26

It also argued that the Loan Loss Exclusion is ambiguous because the marketing materials allegedly used to sell the policy to SSB give the following illustration as an example of a claim under the policy:

> A shareholder derivative action is brought against a bank's board of directors alleging mismanagement. The suit alleges that the directors failed to properly supervise the bank's loan officer. Loans outside the individual officers' loan authority were funded and subsequently charged off. The shareholders seek to recover the value of the charged-off loans.

The FDIC answered Progressive's complaint in the Declaratory Action, which seeks to apply the Loan Loss Exclusion, by stating that "to the extent the allegations could be interpreted to mean that the basis for the claims against the defendants ... are based solely on the individual loans identified, the FDIC specifically denies such allegations as the claims are based on claims of gross negligence and breaches of fiduciary duty and the FDIC seeks compensatory damages as a result of those claims." When Progressive moved for summary judgment in the Declaratory Action, the FDIC stated in its opposition that the FDIC is "seeking damages from the defendants personally for their actions, which resulted in part in loans that never should have been made, extensions of credit that never should have been granted, the improper use of interest reserves, and a myriad of other wrongful acts."[3]

In essence, the FDIC argues that the damages it seeks for the acts of the directors are not "any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt" <u>as defined by Loan Loss Exclusion in the Policy</u>. Johnson takes the FDIC's argument characterizing its damages in relation to the Loan Loss Exclusion and repurposes it as an admission by the FDIC that it is not seeking any damages in this action. This attempt is somewhat transparent because Johnson filed a joinder to the FDIC's opposition, "to the extent that the FDIC argued that the Loan Loss Exclusion was ambiguous." The Court cannot credit Johnson's argument

---

[3] The Court denied Progressive's motion as premature.

13

that the Loan Loss Exclusion's language is ambiguous when he stands to gain insurance coverage, while accepting that the same language is a crystal-clear basis for summary judgment in his favor.

Even if the Loan Loss Exclusion is ultimately found to exclude coverage under the Policy, the FDIC's arguments in the Declaratory Action do not preclude it from pursuing its claims here.  The FDIC has submitted affidavits and declarations on the issue of damages.  Johnson does not show that the FDIC cannot "make a showing sufficient to establish the existence of an element essential to" its case.  Celotex, 477 U.S. at 322.  Accordingly, summary judgment is denied.

V.  Conclusion

**IT IS HEREBY ORDERED THAT** Defendant Douglas E. French's Motion to Dismiss (#32) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Defendant Timothy S. Kirby's Motion to Dismiss and Motion to Strike (#38) is **DENIED**.

**IT IS FURTHER ORDERED THAT** the FDIC's Motion for Leave to File a Surely (#50) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Defendant Carey L. Johnson's Motion for Summary Judgment (#59) is **DENIED**.

DATED this 15th day of November 2012.

_____
Kent J. Dawson
United States District Judge