Case No.:  2:12-CV-209-KJD-PAL

**EXHIBIT B**

**DEFENDANTS' SUBMISSION REGARDING COMPETING PROPOSED ESI
PROTOCOLS TO GOVERN ELECTRONIC DISCOVERY**

FILED IN CHAMBERS
U.S.D.C. - Rome

DEC 13 2012

JAMES N. HATTEN, Clerk
                    Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER OF
OMNI NATIONAL BANK,

        Plaintiff,

    v.

STEPHEN M. KLEIN, et al.,

        Defendants.

CIVIL ACTION

NO. 1:12-CV-0896-RLV

Consolidated with Case Nos.
1:12-CV-1103
1:12-CV-1740
1:12-CV-1877

O R D E R

On September 10, 2012, this court held a status conference in this matter.   At this hearing, the Federal Deposit Insurance Corporation acting as the receiver of Omni National Bank ("the FDIC") asked this court to institute a two-phased discovery.   Also at this hearing and in their subsequent pleadings, most of the defendants opposed the two-phased discovery sought by the FDIC. Thereafter, the parties filed a number of motions to clarify the court's position on discovery.   In order to provide the parties with clear guidance on a host of discovery issues, the court issues this order.

Having reviewed the parties' positions, the court concludes that the two-phased discovery sought by the FDIC and Progressive Casualty Insurance Company ("Progressive") is unnecessary and imprudent for the reasons outlined by the defendants in their September 24, 2012 motion for clarification. Instead of a two-phased discovery advocated by the FDIC and Progressive, the court concludes that the parties should be allowed an additional six months of discovery and that the discovery should be governed by Rule 26 of the Federal Rules of Civil Procedure. In order to allow robust discovery, the court will allow this extended discovery period to begin from the date of the docketing of this order. Therefore, this order amends all prior discovery deadlines imposed by this court.

Furthermore, the court issues the following clarification. First, the parties are not required to participate in additional early planning conferences, submit any additional joint preliminary reports, or serve any initial disclosure in the coverage actions. Second, the FDIC shall be permitted to depose up to twenty witnesses and the defendants are permitted to depose up to thirty witnesses. Third, the parties shall have 15 hours to conduct each deposition. Fourth, each defendant shall be permitted to serve upon the FDIC individual discovery requests. Fifth, the court

concludes that the proposed ESI Protocol, which was attached as Exhibit C to the defendants' September 24, 2012 motion for clarification, is reasonable and fair.   Therefore, the court requires the FDIC to respond to document requests and bear its own discovery costs.   Sixth, the scope of discovery will be governed by Rule 26(b) of the Federal Rules of Civil Procedure.

For the reasons set forth above, the court GRANTS the defendants' motion for clarification [Doc. No. 92] and the court DENIES the Progressive Casualty Insurance Company's motion for clarification [Doc. No. 96].   Finally, the court GRANTS the motion to withdraw opposition to the plaintiffs' motion to consolidate for pretrial and discovery purposes [Doc. No. 103].

SO ORDERED, this _13th_ day of December, 2012.

ROBERT L. VINING, JR.
Senior United States District Judge

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF OMNI NATIONAL BANK, | |
| Plaintiff, | CIVIL ACTION NO. 1:12-cv-00896-RLV |
| v. | |
| STEPHEN M. KLEIN, IRWIN W. BERMAN, BENJAMIN J. COHEN, JULES N. GREENBLATT, KARIM W. LAWRENCE, EUGENE F. LAWSON, III, JEFFREY L. LEVINE, SHANNON C. LIVENGOOD, GREGORY W. PATTEN, AND CONSTANCE E. PERRINE, | Consolidated with Case Nos. 1:12-cv-1103; 1:12-cv-1740; and 1:12-cv-1877. |
| Defendants. | |

**DEFENDANTS' MOTION FOR CLARIFICATION AND REQUEST
FOR RULING ON OUTSTANDING DISCOVERY ISSUES**

Defendants submit this Motion for Clarification and Request for Ruling on

Outstanding Discovery Issues to: (a) respond to the Memorandum Regarding

Sequenced Discovery in Consolidated Actions filed by Progressive Casualty

Insurance Company ("Progressive") [ECF No. 72] in *Progressive Casualty*

*Insurance Company v. Federal Deposit Insurance Corporation, et al.*, No. 1:12-cv-

1103 (the "Progressive Action"); and (b) obtain clarification on certain discovery

issues that remain outstanding following this Court's September 10, 2012 Order

[ECF No. 91] consolidating this action (the "FDIC Action") with the Progressive

Action and two other actions for purposes of pre-trial discovery.[1]  Defendants

address the FDIC's and Progressive's request for phased discovery first, followed

by a brief outline of the discovery issues on which Defendants seek clarification

from the Court.

I.      **Defendants' Objection to the FDIC's and Progressive's Request for Phased Discovery.**

        In its Memorandum Regarding Sequenced Discovery in Consolidated

Actions, Progressive endorses the proposal of the FDIC that the Court stay

discovery on the merits of the FDIC's claims against Defendants – individual

former officers and directors of a community bank – until the FDIC and

Progressive conduct discovery relating to the FDIC's pursuit of insurance coverage

---

[1] The Court's September 10, 2012 Order consolidated the FDIC Action with the following actions for pretrial and discovery purposes: (1) the Progressive Action; (2) *Certain Underwriters at Lloyd's London v. FDIC*, No. 1:12-cv-1740 (the "Lloyd's Action"); and *Klein v. Alwen Hough Johnson, Ltd.*, No. 1:12-cv-1877 (the "Klein Action").  The Progressive, Lloyd's, and Klein Actions are referred to herein as the "Coverage Actions."  Defendants understand that there is some confusion regarding whether the Court's Order consolidated (a) only the Coverage Actions or (b) the FDIC Action with the Coverage Actions, and that the FDIC may address that issue in a separate motion for clarification.  For purposes of this Motion, Defendants assume that the Court's Order, which was entered in the FDIC Action, consolidates this action with the Coverage Actions.

2

for those claims.  Specifically, Progressive and the FDIC propose that discovery

proceed in two phases: (a) a 120-day period devoted to discovery on coverage

issues, to be followed by (b) full merits discovery.  (FDIC's Mem. Summarizing

Presentation at Scheduling Conference [ECF No. 88] at 4; *see also* Progressive's

Mem. at 2.)

     All Defendants oppose phased discovery.  Initially, contrary to Progressive's

and the FDIC's assertions, phased discovery would impede, not promote, judicial

efficiency.  Indeed, the FDIC's motion to consolidate these actions for purposes of

discovery demonstrates as much.  In that motion, which this Court granted, the

FDIC went to great lengths to argue that consolidation is appropriate and that all

parties would benefit from the efficiencies gained by conducting joint discovery on

overlapping factual issues in this action and the Coverage Actions.  (FDIC's Mem.

in Support of Mot. to Consolidate [ECF No. 52-1] at 2-3 (arguing that this case and

the Coverage Actions share "numerous common issues of fact and law" and that

the Court's coverage decision "will turn on the resolution of these common

issues").

     Remarkably, now that the Court has *consolidated* this action and the

Coverage Actions for purposes of discovery, the FDIC seeks to *separate* coverage

and merits-based discovery.  Phasing discovery, however, would result in

3

duplicative discovery, multiple depositions of witnesses, and directly undermine the arguments set forth by the FDIC in support of consolidation.  Simply put, the FDIC cannot have it both ways; merits-based discovery should proceed immediately, if not before discovery in the Coverage Actions.  *See Progressive Cas. Ins. Co. v. Delaney*, No 2:11-cv-0678-LRH-PAL, slip op. at 3 (D. Nev. Aug. 20, 2012) (attached hereto as Exhibit A) (denying summary judgment to Progressive as premature in coverage action relating to substantially similar litigation between FDIC and bank directors because "the details surrounding [the FDIC's] claim are still being developed").

Moreover, the FDIC's proposal – which is tantamount to seeking a stay of this action – is the FDIC's latest attempt to avoid its discovery obligations and thwart Defendants' ability to obtain the information necessary to defend against the FDIC's claims.  Despite the fact that it has now been more than five months since the FDIC sued Defendants, the FDIC continues to seek to avoid merits discovery for at least an additional four months.  Defendants are prepared to move forward with discovery regarding the merits of the FDIC's claims against them, and do not wish to delay the process further.  The FDIC brought this action and should be prepared to defend it now, not when it decides it is ready.

4

Finally, in supporting the FDIC's proposal, Progressive speculates that *if* the

Court orders phased discovery *and* determines that there is no insurance coverage,

*then* the FDIC is unlikely to pursue its claims against Defendants.  The FDIC,

however, has never indicated that it will dismiss its claims in this action if the

Court determines that there is no insurance coverage for the FDIC's claims.

Absent such a commitment by the FDIC, merits-based discovery should proceed in

tandem with coverage discovery.  Thus, for all of these reasons, Defendants

respectfully request that the Court reject the FDIC's and Progressive's request for

phased discovery.

## II.    Defendants' Request for Ruling on Certain Outstanding Discovery Issues

In addition, in light of the Court's September 10, 2012 Order in which it

indicated that it will issue an order on the scope of discovery (Order at 1 n.1) and

September 19, 2012 email inviting the parties to file motions for clarification,

Defendants respectfully request that the Court's upcoming order include a

determination on the discovery issues outlined below, all of which remain

outstanding following the Court's September 10, 2012 Order on consolidation.  In

further support of issues (b) through (f) listed below, Defendants refer the Court to

their September 4, 2012 letter to Jill Ayers, which sets forth these issues in more

5

detail.  For the Court's convenience, the September 4th letter is attached hereto as

Exhibit B.

      a)      **Joint Preliminary Report and Discovery Plan and Initial**

**Disclosures** – Prior to the Court's September 10, 2012 Order, the parties in the

FDIC action held an early conference, submitted a Joint Preliminary Report and

Discovery Plan [ECF No. 61] (the "Preliminary Report"), and, on August 28, 2012,

appeared before the Court for a scheduling conference.  Likewise, the parties in

this action already have submitted initial disclosures.  In light of consolidation,

Defendants request that the Court clarify the Defendants' additional obligations, if

any, to participate in an early planning conference, submit a Joint Preliminary

Report and Discovery Plan, and serve initial disclosures in the Coverage Actions.

Defendants request that the Court order that they have no additional obligations.

      b)      **Number of Depositions** – As discussed in Defendants' September 4th

letter, Defendants request that the Court order that the FDIC shall be permitted to

depose up to twenty witnesses and Defendants be permitted to depose up to thirty

witnesses.

      c)      **Duration of Depositions.**  In the Preliminary Report, the FDIC and

Defendants agreed to increase the permissible duration of each deposition to ten

hours.  In light of the consolidation of this action with the Coverage Actions – and

the concomitant addition of multiple parties and counsel who may participate in each deposition – Defendants request that the Court increase the time limit to 15 hours.

d)      **Joint Discovery Requests** – Although Defendants will endeavor to serve joint discovery requests when practicable, Defendants respectfully request that the Court clarify that, in accordance with the Federal Rules, each Defendant shall be permitted to serve upon the FDIC individual discovery requests.

e)      **Document Production by Search Terms Only** – As set forth in Defendants' September 4th letter, Defendants request that the Court clarify that the FDIC, in accordance with the Federal Rules and well-established precedent, shall be required to respond to document requests and bear its own discovery costs. Further, Defendants request that the Court enter Defendants' proposed ESI Protocol, which is reasonable and fair to all parties and balances the use of traditional document requests with search terms.  For the Court's convenience, Defendants' proposed ESI Protocol is attached hereto as <u>Exhibit C</u>.

f)      **Scope of Document Discovery** – Defendants ask the Court to clarify that the scope of discovery in the consolidated actions will be governed by Fed. R. Civ. P. 26(b) and that the FDIC is not permitted to unilaterally limit the scope of discovery to Omni National Bank documents by refusing to produce other

documents relevant to the claims and defenses in this action, including the FDIC's own documents.

Respectfully submitted this 24th day of September, 2012.

/s/ *Thomas B. Bosch*_____
Thomas B. Bosch (GA Bar No. 068740)
Natalie D. Sacha (GA Bar No. 558276)
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
Telephone: (404) 885-3000
Facsimile:  (404) 962-6796
tom.bosch@troutmansanders.com
natalie.sacha@troutmansanders.com
*Attorneys for Defendant Jeffrey L. Levine*


/s/ *Theodore J. Sawicki*_____
Theodore J. Sawicki (GA Bar No. 627851)
Robert R. Long (GA Bar No. 141546)
Elizabeth Gingold Greenman (GA Bar No. 917979)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile:  (404) 881-7777
robert.long@alston.com
elizabeth.greenman@alston.com
*Attorneys for Defendants Stephen M. Klein and
Eugene F. Lawson, III*

8

/s/ *Tracy Klingler*
David L. Balser (GA Bar No. 035835)
Tracy Klingler (GA Bar No. 105450)
Zachary A. McEntyre (GA Bar No. 653571)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5138
dbalser@kslaw.com
tklingler@kslaw.com
zmcentyre@kslaw.com
*Attorneys for Defendant Irwin W. Berman*


/s/ *Joseph C. Chancey*
Joseph C. Chancey
Gary D. Beelen
Meredith Riggs Guerrero
DREW ECKL & FARNHAM
880 W. Peachtree Street
P. O. Box 7600
Atlanta, GA 30357-7600
Telephone: (404) 885-1400
jchancey@deflaw.com
gbeelen@deflaw.com
mguerrero@deflaw.com
*Attorneys for Defendants Constance Perrine and*
*Benjamin J. Cohen*

9

/s/ *Jeffrey D. Horst*
Jeffrey D. Horst
Christopher E. Adams
KREVOLIN & HORST, LLC
Suite 3250, One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile:  (404) 888-9755
horst@khlawfirm.com
adams@khlawfirm.com
*Attorneys for Defendant Jules N. Greenblatt*


/s/ *Scott B. Riddle*
Scott B. Riddle
LAW OFFICES OF SCOTT B. RIDDLE
3340 Peachtree Road, NE, Suite 1530
Atlanta, GA 30326
Telephone: (404) 815-0164
Facsimile:  (404) 815-0165
sbriddle@mindspring.com
*Attorneys for Defendant Shannon C. Livengood*


/s/ *Frank G. Podesta*
Richard A. Rice, Jr.
Frank G. Podesta
BOMAR RICE, LLC
100 Galleria Parkway, SE, Suite 100
Atlanta, GA 30339
Telephone: (404) 835-0783
Facsimile:  (404) 841-9178
rrice@bomarrice.com
fpodesta@bomarrice.com
*Attorneys for Defendant Gregory W. Patten*

## LOCAL RULE 7.1D CERTIFICATION

By signature below, counsel certifies that the foregoing document was

prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

/s/ *Thomas B. Bosch*
Thomas B. Bosch
Georgia Bar No. 068740

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANTS' MOTION FOR CLARIFICATION AND REQUEST FOR RULING ON OUTSTANDING DISCOVERY ISSUES** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This the 24th day of September, 2012.

/s/ *Thomas B. Bosch*
Thomas B. Bosch
Georgia Bar No. 068740

# EXHIBIT A

Case 2:11-cv-00678-LRH-PAL   Document 54-4   Filed 08/24/2012   Page 2 of 3

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

PROGRESSIVE CASUALTY INSURANCE
COMPANY,

              Plaintiff,

  v.

DELANEY; et al.,

              Defendants.

2:11-CV-0678-LRH-PAL

ORDER

Before the court is plaintiff Progressive Casualty Insurance Company's ("Progressive")
motion for summary judgment. Doc. #20.[1]

I.    **Facts and Procedural History**

This is a declaratory relief action brought by plaintiff Progressive against defendants to
determine whether a company liability insurance policy issued by Progressive to defendant Sun
West Bank covers an underlying claim made by the Federal Deposit Insurance Corporation
("FDIC") against Sun West Bank's board of directors.

On April 29, 2011, Progressive filed the underlying complaint for declaratory relief.
Doc. #1. Shortly thereafter, prior to any discovery, Progressive filed the present motion for
summary judgment. Doc. #20.

---

[1] Refers to the court's docket entry number.

## II.    Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

///

2

**III.   Discussion**

  As a preliminary matter, this court finds the present motion for summary judgment premature as discovery in this matter has not yet begun. The court recognizes that the underlying insurance dispute is directly tied to the FDIC's claim against Sun West Bank's board of directors. Thus, it is important for the court to have all of the details surrounding that claim before it. Yet, the circumstances surrounding that claim are still being developed and that the specificity of the facts, including the timeliness of the FDIC's claim, will impact the application and interpretation of the terms and conditions of the underlying insurance policy. Therefore, the court finds that it cannot determine the application of certain insurance provisions as requested in Progressive's motion solely on the extremely limited record currently before the court. Accordingly, the court shall deny Progressive's motion for summary judgment without prejudice.

  IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Doc. #20) is DENIED without prejudice.

  IT IS SO ORDERED.

  DATED this 20th day of August, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

3

# EXHIBIT B

# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

Tracy L. Klingler
Direct Dial: +1 404 572 2804
Direct Fax: +1 404 572 5100
tklingler@kslaw.com

September 4, 2012

**VIA E-MAIL**

Ms. Jill Ayers
Courtroom Deputy
The Honorable Robert L. Vining, Jr.
U.S. District Court, Northern District of Georgia
600 East First Street, Suite 345
Rome, Georgia  30162-6226

> Re:   *FDIC v. Klein, et al.*, Case No. 1:12-cv-00896-RLV

Dear Ms. Ayers:

As we discussed on the phone, I am writing on behalf of all Defendants in this matter in an effort to elucidate the issues raised during the August 28, 2012 status conference.  As set forth in the Joint Preliminary Report, Defendants and the FDIC have agreed on a number of discovery issues, including the schedule that will govern discovery.  The parties have not agreed, however, on six pivotal issues.

Underlying each of the disputed issues is the FDIC's fundamentally flawed position that this case should not be governed by the Federal Rules of Civil Procedure (the "Rules") and the Local Rules of this Court.  Having asserted broad claims against nine former officers and directors of Omni National Bank (the "Bank") for more than $35 million, the FDIC seeks to avoid its discovery obligations related to those broad claims.  As the FDIC's post-Scheduling Conference filing [ECF No. 88] makes clear, the FDIC also seeks to prevent Defendants from engaging in discovery and defending themselves in hopes that it will recover insurance proceeds instead of litigating the claims it asserted.  As addressed below, the FDIC's positions lack merit.

## (1)   Consolidation With Coverage Actions

The FDIC moved to consolidate this case with three declaratory judgment actions regarding the availability of insurance coverage for defense and indemnity.  Notwithstanding the FDIC's post-Scheduling Conference filing, the FDIC's motion for consolidation is fully briefed

Ms. Jill Ayers
September 4, 2012
Page 2

and Defendants will not restate their positions here.[1]  As reflected in the previous filings, some Defendants oppose this motion, some support this motion, and others take no position.  All Defendants agree, however, that disposition of this motion is the logical first step in resolving the parties' disputes regarding discovery.

    (2)    **Stay Pending Resolution of Coverage Actions**

At the August 28 status conference, counsel for the FDIC – for the first time – proposed staying this litigation until the Court decides the summary judgment motion one of the insurers, Progressive Casualty Insurance Company, filed in its declaratory judgment action.  The FDIC favors this proposal because it would permit the FDIC to ascertain the amount of insurance money available before incurring costs associated with prosecuting the lawsuit it filed.

Defendants oppose the FDIC's proposal.  The FDIC had ample opportunity to attempt to resolve this case before filing it, but it elected not to make a good-faith effort to do so.  Having alleged that Defendants – nine individual former directors and officers of a community bank – were grossly negligent in the performance of their professional duties, the FDIC cannot indefinitely postpone incurring any costs in connection with the lawsuit it filed merely because it does not know how much, if any, insurance money may be available.  Even if the Court determines that no coverage exists, Defendants' potential liability is not extinguished; they will remain defendants in this lawsuit.  If the FDIC will stipulate that it will dismiss its claims against Defendants with prejudice if the Court decides no coverage exists, then Defendants will consider the FDIC's proposed stay.  Otherwise, Defendants intend, and have the right, to defend themselves vigorously and without delay.

    (3)    **Number and Duration of Depositions**

Defendants and the FDIC agree that both sides will need more than the ten depositions per side that the Rules prescribe.  Defendants and the FDIC agree that the FDIC should be permitted to take up to twenty depositions.  But Defendants contend that they collectively should be permitted to depose up to thirty witnesses, while the FDIC proposes to limit Defendants to twenty depositions.

The FDIC sued nine Defendants, many of whom have conflicting interests.  While some witnesses will have knowledge common to all Defendants' defenses, some Defendants will need to depose witnesses who have knowledge unique to their individual defenses.  Defendants will

---

[1] Moreover, as Progressive Casualty Insurance Company points out in its Response to the FDIC's post-Scheduling Conference filing [ECF No. 90], the FDIC raised and addressed the pending motion to consolidate without having noticed the motion for the hearing, and consequently, outside of the presence of all of the parties to the declaratory judgment actions, including some of the Defendants in this case who are representing themselves *pro se* in those actions.

Ms. Jill Ayers
September 4, 2012
Page 3

make every effort to maximize efficiencies, but they should not be hamstrung by an artificially
low number of depositions in a case of this complexity and with stakes this high.

> (4)   **Joint Interrogatories and Requests for Admission**

The FDIC asks the Court to modify the Rules by requiring Defendants to serve joint
interrogatories and requests for admission on "common issues." This proposal virtually ensures
unnecessary discovery disputes. Because Defendants' interests in this case are not uniformly
aligned, individual Defendants necessarily will serve individual discovery requests, yet as soon
as one Defendant does so, the FDIC surely will object that the discovery actually is on a
"common" issue and ask the Court to step into the breach.

The directors and officers liability policies that may provide coverage for FDIC's claims
are "eroding limits" policies. As such, defense costs diminish the amount of coverage available
for indemnity against a potential adverse judgment. For that reason, Defendants intend – and
have every incentive – to conduct discovery as efficiently as possible. The consolidated requests
for production of documents that Defendants collectively served on August 27 demonstrate as
much. There is no reason for the Court to limit Defendants' rights under the Rules to defend
themselves individually against the distinct claims the FDIC has asserted against them as
individuals.

> (5)   **Document Production by Search Terms Only**

Along the same lines, the FDIC asks the Court to disregard Defendants' rights to obtain
relevant documents under Rule 34 in favor of the FDIC's one-sided ESI Protocol. Specifically,
the FDIC seeks to: (1) force Defendants to rely exclusively on search terms as a means of
identifying documents for production; and (2) shift to Defendants the FDIC's burden and
expense of reviewing, identifying, and producing relevant documents.

The FDIC asserts that "modern" document discovery "routinely" is conducted without
regard to a defendant's right to obtain documents to defend himself, and without regard to a
plaintiff's obligation to bear the burden and costs associated with searching for, reviewing, and
producing relevant documents. Neither the recent amendments to the Rules, nor recent case law,
support this remarkable assertion. Indeed, Defendants are not aware of a single decision,
including those the FDIC cites in its post-Status Conference filing [ECF No. 88], in which a
court, over the objection of a requesting party, has eliminated Rule 34 document requests in
favor of a search term only ESI protocol.

Search terms are no substitute for reviewing potentially responsive documents to
determine whether they must be produced. *See William A. Gross Constr. Assocs. v. Am. Mfrs.
Mut. Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y. Mar. 19, 2009) (warning of the unreliability of search
terms); *see also Nat'l Day Laborer Org. Network v. United States Immigration & Customs
Enforcement Agency*, 2012 U.S. Dist. LEXIS 97863, at *46-47 (S.D.N.Y. July 13, 2012) ("There
is increasingly strong evidence that "[k]eyword search[ing] is not nearly as effective at

Ms. Jill Ayers
September 4, 2012
Page 4

identifying relevant information as many lawyers would like to believe.") (citation omitted) (alterations in original).

Moreover, according to the authority upon which the FDIC relies, the *producing party* (here, the FDIC) is presumed to bear the burden and expenses of review and production *unless* the requesting party exceeds the bounds of Rule 34. *See Williams v. Taser Int'l, Inc.*, 2007 U.S. Dist. LEXIS 40280, at *16-19 (N.D. Ga. June 4, 2007) (granting requesting party's request to review all search-term positive data and allowing producing party to review documents for privilege at its own expense); *Independent Mktg. Grp., Inc. v. Keen*, 2012 U.S. Dist. LEXIS 7702, at *8-9 (M.D. Fla. Jan. 24, 2012) (granting requesting party's motion to compel and requiring producing party to produce ESI in searchable format at the producing party's expense); *Zakre v. Norddeutsche Landesbank Girozentrale*, 2004 U.S. Dist. LEXIS 6026 (S.D.N.Y. Apr. 6, 2004) (holding that a producing party did not have to index documents produced, but not addressing the costs associated with review or production). None of these cases required the requesting party to pay costs associated with review or production, and the FDIC can cite no authority for its claim that it is "customary" to charge requesting parties for any part of an electronic production, much less $.06 per page. *See, e.g. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (noting that the presumption is that the producing party must bear the expense of complying with discovery requests); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 -17 (S.D.N.Y. 2003) (noting that "[a]ny principled approach to electronic evidence must respect this presumption").

Unlike the FDIC's proposal, Defendants' revised ESI Protocol, which is attached, (1) accounts for the requirements Rule 34 imposes on both parties; (2) provides for search term procedures that will allow the parties to conduct discovery efficiently; and (3) provides for traditional discovery methods where search term procedures will not address the parties' discovery needs – *e.g.*, in circumstances in which Defendants request entire loan files and documents the FDIC created, modified, or otherwise relied upon in managing and disposing of the loans at issue and the underlying real estate. In other words, Defendants' ESI Protocol balances Defendants' individual rights to discovery with reasonable limits on the scope of discovery. This approach is fair to all parties, including the FDIC.

(6)   **Scope of Document Discovery**

Finally, the FDIC's proposed ESI Protocol applies only to Bank documents. Defendants have raised several defenses, however, which directly relate to the FDIC's acts and omissions after it assumed receivership of the Bank and exercised sole control over the Bank's assets. For example, Defendants contend that the FDIC failed to mitigate reasonably any alleged damages when it sold the Bank's foreclosed real properties in bulk-sale auctions to non-resident investors for a fraction of their fair market values.

Contrary to Rule 26(b), which permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," the FDIC asserts that Defendants are only entitled to the FDIC's own documents upon a showing of good cause. There is no basis for this

Ms. Jill Ayers
September 4, 2012
Page 5

proposal. Indeed, if the Court adopted the FDIC's ESI Protocol as written, Defendants would be
unable to obtain key documents necessary for their defense.

Furthermore, the FDIC's position concerning its documents underscores the need for
traditional document requests. For example, several of the requests in Defendants' Consolidated
Requests for Production seek FDIC documents. If the FDIC believes it is not obligated to
produce some or all of these documents, it should be required to make the showing necessary to
obtain a protective order under Rule 26. the FDIC should not be permitted to avoid the issue all
together by unilaterally (and improperly) narrowing discovery available to Defendants.

***

Defendants stand ready to work with the FDIC in a good-faith effort to resolve the
parties' disagreements, and have direct financial incentives to litigate this matter efficiently. But
Defendants cannot compromise their rights under the Rules to defend themselves against the
FDIC's grave allegations. Accordingly, Defendants request that the Court resolve these disputes
in the manner set forth above. Defendants are prepared to submit additional briefing on any of
the points addressed in this letter should the Court find such briefing helpful.

Sincerely,

Tracy L. Klinger

Counsel for Defendant Irwin W. Berman
and on behalf of all Defendants

cc:     Counsel of Record (via e-mail)

# EXHIBIT C

## EXHIBIT 1 TO JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF OMNI NATIONAL BANK<br><br>    **Plaintiff,**<br><br>v.<br><br>STEPHEN M. KLEIN, IRWN W. BERMAN, BENJAMIN J. COHEN, JULES N. GREENBLATT, KARIM W. LAWRENCE, EUGENE F. LAWSON, III, JEFFREY L. LEVINE, SHANNON C. LIVENGOOD, GREGORY W. PATTEN, AND CONSTANCE E. PERRINE<br><br>    **Defendants** | CIVIL ACTION NO. 1:12-cv-00896<br><br><br>JURY TRIAL DEMANDED |

## JOINT PROPOSED PROTOCOL REGARDING ELECTRONICALLY STORED INFORMATION

Plaintiff and Defendants have conferred regarding the production of electronically stored information ("ESI") and submit this Joint Proposed Protocol Regarding Electronically Stored Information ("ESI Protocol") in compliance with Local Rule 16.2 and App. B-11(b)(1) and (2),

1141110_1.DOCX

20046524v5

and respectfully move the Court to enter an Order approving the same.

1.    This action relates to Omni National Bank ("Omni" or the "Bank").  On March 27, 2009, the Office of the Controller of the Currency closed Omni and appointed the Federal Deposit Insurance Corporation ("FDIC") to serve as Receiver.  As used herein, "FDIC-R" or "Plaintiff" means FDIC in its capacity as Receiver of Omni, and "Defendants" mean collectively Stephen M. Klein, Irwin W. Berman, Benjamin J. Cohen, Jules N. Greenblatt, Karim W. Lawrence, Eugene F. Lawson, III, Jeffrey L. Levine, Shannon C. Livengood, Gregory W. Patten, and Constance E. Perrine.

2.    This Protocol applies to the ESI provisions of FED. R. CIV. P. 16, 26, 33, 34, and 37. As used herein, the words "Party" or "Parties" include Plaintiff and Defendants.

3.    In this Protocol, the following terms have the following meanings:

a.    "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.  Metadata is a subset of ESI.

b.    "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.  Native Files are a subset of ESI.

c.    "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.  In the absence of agreement of the Parties or order of Court, a Static Image should be provided in Tagged Image File Format (TIFF, or .TIF files).  If a TIFF or .TIF file

-2-

1141110_1.DOCX

20046524v5

cannot be created, then the Static Image should be provided in Portable Document Format (PDF). If load files[1] were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files shall be provided as set forth in Exhibit A.

4.     The provisions set forth in Exhibit A shall govern the production of ESI.

5.     FDIC-R or its contractors are in possession of certain ESI related to Omni and obtained from Omni's legacy systems. The Omni-related ESI includes, the following unstructured databases: (1) OM Forensic Data; (2) OM Scanned Documents; (3) OM Misc. Data and Bank Branch File Shares; (4) OM Email Database, as well as certain structured databases, a list of same attached hereto as Exhibit B; and (5) documents that exist in physical hard-copy format that are to be converted to ESI pursuant to Exhibit "A." Collectively, the foregoing ESI is referred to hereinafter as "Omni ESI." FDIC-R represents that the Omni ESI listed on Exhibit B is a complete and accurate listing of all ESI obtained from Omni by FDIC-R. This ESI Protocol applies only to "Omni ESI" as defined herein, and Defendants reserve the right to seek additional ESI in the possession or control of FDIC and the FDIC-R, including ESI created or modified by the FDIC in connection with its receivership over Omni. Subject to the terms of this ESI Protocol and the Protective Order, FDIC-R shall process and produce any and all responsive documents to Defendants in accordance with the procedure set forth in this ESI Protocol in the format specified in Exhibit A.

6.     FDIC-R shall produce the Omni ESI in two phases. Phase I will focus on centrally

---

[1] A "load file," as that term is used herein, refers to the file necessary to load data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

-3-

1141110_1.DOCX

stored emails from the OM Email Database and targeted sets of documents not amenable to
search terms. Phase II shall include additional designated sources of ESI and search terms based
on the information produced during Phase I.

      7.    In Phase I, Defendants shall collectively identify a reasonable set of search terms to
run across designated custodians' mailboxes from the OM Email Database.   Thereafter, the
Parties shall meet and confer in good faith to establish agreed search terms for these centrally
stored email sources. In order to facilitate the good faith negotiation of search terms between the
Plaintiff and Defendants, Plaintiff shall provide search term hit reports to Defendants which
identify the number of unique documents which hit upon each identified search term requested
by Defendants. Plaintiff shall also identify in the hit reports the number of family members for
the unique hits. This search term process will be iterative and therefore might require several
iterations of revised terms and hit reports. Plaintiff shall also produce statistically random subsets
of search-term-positive, relevant, non-privileged data for Defendants to assess the utility of the
terms prior to final agreement on search terms (test production).  Plaintiffs shall also provide
Defendants with an exception report listing any data that could not be searched or processed. If
the Parties are unable to agree upon a final set of search terms after conferring in good faith, any
Party may raise the issue with the Court by motion. After the Parties have agreed upon search
terms for these centrally stored emails, or established search terms with the assistance of the
Court, FDIC-R, at its own expense, shall apply the search terms to filter the emails, perform a
responsiveness review, and produce all non-privileged emails and attachments responsive to
Defendants' discovery requests in the format specified in Exhibit A.  FDIC-R shall produce
responsive, non-privileged emails and attachments, and log any document reasonably believed

-4-

1141110_1.DOCX

20046524v5

not to be discoverable because it is privileged, subject to the work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege.

8.    In Phase I, FDIC-R also will produce to Defendants responsive, non-privileged categories of Omni ESI which are not amendable to the use of search terms including, but not limited to, the Loss Loan files, appraisal reports, Bank policies, organizational charts, Board of Director's Meeting Minutes, Loan Committee Meeting Minutes, personnel records and regulator examination reports.  Defendants shall provide Plaintiff with collective requests for production of documents for such documents, and each Defendant reserves the right to serve Plaintiff with additional requests, provided that such additional requests are material and are not duplicative of documents requested collectively by Defendants.

9.    In Phase II of FDIC-R's production of Omni ESI, Defendants shall have the right to propose a second round of email search terms, which again may be an iterative process and could encompass running Phase I search terms against new sources of ESI discovered during Phase I and/or new search terms to be run against Phase 1 sources or against new sources discovered during Phase I, and to identify other sources for targeted searches and production based on information obtained during Phase I productions, provided that the modifications are targeted to identify documents that otherwise would not have been identified by the initial scope and which are likely to be material. The Parties shall meet and confer in good faith to determine the scope of productions in Phase II.  If the Parties are unable to agree upon the scope of the Phase II production of Omni ESI after conferring in good faith, any Party may raise the issue with the Court by motion.

10.    Regardless of the protocols set forth in this ESI Protocol, FDIC-R shall produce any

-5-

1141110_1.DOCX

and all non-privileged ESI it intends to rely upon in support of any claim or defense during the course of the litigation.

11. Defendants with relevant ESI, at their own expense, shall identify and produce non-privileged ESI that is responsive to Plaintiff's discovery requests in the format specified in Exhibit A. Defendants shall log any document reasonably believed to be not discoverable because it is privileged, subject to the work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege.

12. In accordance with Federal Rule of Evidence 502(b), no party shall be deemed to have waived its right to assert the attorney-client privilege and/or attorney work-product privilege (collectively "Privilege") if Privileged materials are inadvertently disclosed despite the parties' exercise of a reasonable standard of care with respect to the production of such materials. Upon the discovery by any party of an inadvertent disclosure of materials protected by Privilege, in accordance with Federal Rule of Civil Procedure 26(b)(5)(B) that party shall promptly notify the other counsel in writing of the disclosure, identify the document that contains such materials, and immediately take steps to preclude further disclosure. In such an event, the party receiving the materials protected by Privilege will return or destroy all copies of identified materials and treat those materials as if they had been initially excluded from production.

13. The return or destruction of a document or materials over which the producing party has asserted a claim of Privilege as set forth above shall be without prejudice to the receiving party's right to seek an order from the Court directing the production of the document on the ground that the claimed Privilege is invalid or inapplicable; provided, however, that mere

20046524v5

production of the document or information in the course of this action shall not constitute

grounds for asserting waiver of the Privilege.

14.   Nothing in this Protocol requires Plaintiff or Defendants to produce again

information that was produced to the other before this action was commenced.

Respectfully submitted, this ___ day of August, 2012.

| /s/ _____ | /s/ _____ |
|---|---|
| *One of the Attorneys for FDIC as Receiver of Omni National Bank* | *One of the Attorneys for Defendant* Fill in |
| Fill in | |

[fill in electronic signature block for each party]

-7-

1141110_1.DOCX

20046524v5

Exhibit A to Joint ESI Protocol
*FDIC v. Klein, et al.*, Case No. 1:12-cv-00896 (N.D.Ga.)

## Form of Production for Email

All electronic email from Windows-Based ESI ("WESI") shall be produced as Static Images complete with full text extracts and the following fields of metadata, to the extent the metadata is available:

1. Custodian (Name of Custodian from which file is being produced);
2. Other Custodians (Name(s) of custodian(s) who had exact copy of message before de-duplication);
3. Author (FROM field);
4. CC;
5. BCC;
6. Recipient (TO field);
7. MD5 Hash Value or Equivalent;
8. Date Sent (Date the email was sent);
9. Date Received (Date the file was received);
10. Time Sent (Time the email was received);
11. Time Received (Time the email was received);
12. File Type (Application used to create the file);
13. Page Count;
14. File Ext (Extension for the file);
15. PST Name;
16. Body Text (Extracted text);
17. Bates Begin (Beginning Production Number);
18. Bates End (Ending Production Number);
19. Attach Begin (Beginning Attachment Range Number);
20. Attach End (Ending Attachment Range Number).

Electronic mail shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant and not privileged. As a general matter, subject to specific review, a message and its attachments(s) shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant or non-responsive. To the extent the message and/or one or more attachments is privileged or non-responsive, the responsive, non-privileged documents shall be produced along with placeholders indicating whether the individual record was withheld as non-responsive or privileged.

## Form of Production for Other WESI

All other WESI (including attachments to electronic mail) shall be produced as Static Images complete with full text extracts and the following fields of metadata to the extent the metadata is

-8-

available:

1. Custodian (Name of Custodian from which file is being produced);
2. Other Custodians (Name(s) of custodian(s) who had exact copy of file before de-duplication);
3. Author;
4. Doc Title (Title of file from properties);
5. Doc Subject (Subject of file from properties);
6. Created Date (Date the file was created);
7. Created Time (Time the file was created);
8. Last Modified Date (Date the file was last modified);
9. Last Modified Time (Time the file was last modified);
10. Last Saved By (Name of user who last saved the file);
11. File Type (Application used to create the file);
12. Doc Type;
13. Page Count;
14. File Ext (Extension for the file);
15. Path (Full path of the original location where the file was located);
16. MD5 Hash (MD5 hash value of the original native file);
17. Body Text (OCR for paper data or Extracted text for all ESI);
18. Bates Begin (Beginning Production Number);
19. Bates End (Ending Production Number);
20. Attach Begin (Beginning Attachment Range Number);
21. Attach End (Ending Attachment Range Number),

## Form of Production for Spreadsheets

ESI in the form of spreadsheets shall be produced in native format with the first page of the file converted to a static image and linked to the native file. These documents will be accompanied with the appropriate load files indicating a cross reference to the Bates numbered Static Image.

## Load Files

All WESI shall be produced along with an IPRO, Opticon, or Summation DII load file indicating Bates numbers and document breaks. Metadata shall be produced in Concordance DAT file format, DII format and summary text file for Summation, or XML format and extracted full text shall be provided in TXT file format at the document level. Non-Windows-Based Applications and Data shall be subject to the same production requirements to the extent technically and legally feasible.

## Data Culling

The following file types shall be processed for production:

1141110_1.DOCX

-9-

20046524v5

| Extension | File Type Description |
|---|---|
| cab | Windows cabinet (data will be extracted and container file discarded) |
| csv | Comma Separated Values file |
| dat | Data file |
| dbx | Outlook Express E-mail Folder |
| doc | Microsoft Word |
| doom | Microsoft Word Template |
| docx | Microsoft Word 2007 |
| dxl | Lotus Notes Message File |
| efax | Electronic fax documents |
| email | Outlook Express E-mail Message |
| eml | Outlook Express Saved Mail Messages files |
| emlx | Apple Mail email message |
| htm | Web based Hypertext Markup Language.File |
| html | Web based Hypertext Markup Language File |
| ics | Calendar items in Apple, Mozilla and Google |
| key | Apple Keynote presentation |
| maildb | MSN Mail file |
| mbox | Unix MAC file mailbox |
| mlm | Novell GroupWise saved email message file |
| mdb | Microsoft Access Database |
| mht | Multipurpose Internet Mail Extension |
| mim | Multipurpose Internet Mail Extension |
| mpp | Microsoft Project |
| msg | Outlook Mail Message |
| nsf | Lotus Notes (data will be extracted and container file discarded) |
| ost | Microsoft Outlook Offline folder file (data will be converted, extracted, and container file discarded) |
| pbx | Outlook Express message folder file |
| pdf | Portable Document Format File |
| pop | PopMail messages file |
| pps | Microsoft PowerPoint Show file |
| ppt | Microsoft PowerPoint file |
| pptx | Microsoft PowerPoint 2007 |
| pst | Microsoft Outlook personal folder file (data will be extracted and container file discarded) |
| rar | WinRAR compressed archive (data will be extracted and container file discarded) |
| rtf | Rich Text Format |
| tif | Tagged Image Format |
| txt | Plain Text File |

-10-

1141110_1.DOCX

20046524v5

| wks | Works Spreadsheet |
| wpd | Corel WordPerfect |
| wps | Microsoft Works Word Processor Document |
| xls | Microsoft Excel |
| xlsx | Microsoft Excel 2007 |
| xml | Extensible Markup Language file |
| xps | XML Paper Specification |
| zip | Zipped Compressed File (data will be extracted and container |
| zipx | Extended Zipped Compressed File (data will be extracted and |

## Duplicates

To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a party's data set, each party shall produce only a single copy of a responsive document, but shall produce a field listing all custodians of the de-duplicated copies. This de-duping should be done only on exact duplicative documents, and only documents where the main parent document and the attachments are exactly the same will be considered exact duplicates.

## Production Media

Documents shall be produced on external hard drives, readily accessible computer or electronic media, e.g., CDs or DVDs, or by FTP upload ("Production Media"). All Production Media should have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for the native Excel files. The Production Media shall identify: (a) the producing party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

## Color

Where the original of a produced document is in color, and color is material to the interpretation of the document, the receiving party may request that the document be produced in color (whether electronic or paper).

## Physical Documents

Documents that exist solely in physical hard-copy format shall be converted and produced following the same protocols outlined above. The metadata shall indicate document breaks and identify the custodian from whom the document was collected. The ".tiff" files shall be subject to an Optical Character Recognition ("OCR") process.

-11-

1141110_1.DOCX

20046524v5