# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

FEDERAL DEPOSIT INSURANCE CORPORATION,

                Plaintiff,

vs.

COREY L. JOHNSON, et al.,

                Defendants.

Case No. 2:12-cv-00209-KJD-PAL

**ORDER**

(Mot for Protocol re Disc - Dkt. #89)

The court conducted a hearing on February 12, 2013, on the parties' Competing Proposed ESI Protocols to Govern Electronic Discovery in this case (Dkt. #89). Anthony Kirkwood and Stanley Parry appeared on behalf of the Plaintiff. Neal Klegerman, Eric Reed, and Grace Rebling appeared telephonically for Defendants, and Martha Ashcraft, Jessica Peterson were present in the courtroom for Defendants. The court has reviewed Response (Dkt. #92) and Reply (Dkt. #96), and heard the arguments of counsel at the hearing. At the conclusion of the hearing, the court indicated that the FDIC proposal was approved, and that a written order would follow.

The ESI proposals submitted by the FDIC and the Defendants are substantially identical and differ in only one respect. Counsel for the FDIC circulated the initial draft. The parties met and conferred, and on August 22, 2012, the FDIC circulated the ESI protocol that incorporated the changes resulting from the parties' conference calls. Counsel for the Defendants then submitted the ESI protocol to their insurer, Progressive Insurance Company ("Progressive") for its approval in early January 2013. Counsel for the FDIC represents that the draft that was forwarded to Progressive was approved by defense counsel. However, Progressive rejected the ESI proposal the parties had agreed to objecting to a provision requiring the Defendants to pay $.06/page for the documents on the electronic database that Defendants select to have delivered.

The parties competing ESI protocols both require the Defendants to collectively identify a reasonable set of search terms to run across the processed ESI. After search terms are developed by the Defendants, the protocol requires that the FDIC export the documents captured by the search to a Relativity database. The parties have agreed that the Defendants will pay a monthly collective fee of $10/gigabyte of ESI hosted on the database. Defendants will be granted access to review the documents and designate those that are relevant. The FDIC will then conduct a privilege review of the documents and produce the non-privileged documents designated for delivery.

The FDIC will take native files in its database and provide Defendants copies on a separate physical media device. The $.06 charge is based on the FDIC's estimate of average production costs in a typical case, quotes the FDIC received from its outside vendor, and a review of market prices for services that the FDIC provides to the Defendants in connection with making and delivering electronic copies of requested ESI in the form the Defendants have demanded. The rate is not calculated to recoup costs initially incurred by the FDIC to locate, collect or process data after the bank's failure, or to export selected ESI into the internet database. The rate was estimated based on various services the FDIC has provided to Defendants in prior litigation. The $.06 rate incorporates estimates of $.15 per page for scanning paper documents; $.35/page for optical character recognition processing of paper documents; $326/gigabyte to "image" ESI; $.25/page to affix Bates numbers and confidentiality designations on items of ESI; and labor costs ranging from $35/hr. to $300/hr. for technical time, quality control group viewers, and project managers.

Counsel for the FDIC represents that the FDIC has already spent $791,000 in expenses in developing an electronic database for discovery in this case, and anticipates incurring thousands more to process and produce ESI requested by the Defendants. The FDIC is not seeking to recoup any portion of the $791,000 in expenses it has incurred, or future costs for processing and producing ESI. The FDIC points out that it has already produced, at its sole cost, a large volume of ESI in its initial disclosures and in supplemental productions. Specifically, the FDIC initially produced 6,680 documents or approximately 90,000 pages in its initial disclosures. Its first supplemental production included an additional 3,044 documents totaling approximately 37,000 pages. The FDIC's second supplemental production produced 65 documents and approximately 992 pages. Its third supplemental

production produced 11 documents and 684 pages. Its fourth supplemental production produced 284 documents and approximately 16,000 pages. Finally, the FDIC produced four documents consisting of approximately 688 pages in response to Defendant Corey Johnson's First Request for Production of Documents. In total, the FDIC has produced over 10,000 documents in .pdf format amounting to approximately 144,540 pages.

These productions were organized by category, with sub-folders when appropriate to separate groups of similar documents. The documents were labeled and organized in chronological order when applicable. The documents the FDIC has produced include loan files, Reports of Examination, minutes and packets from the board of directors meetings, and other materials.

The FDIC argues that its ESI proposal will minimize the overall cost to all parties because there is no need for the parties to incur the cost of hosting multiple review platforms. Rather, after the parties have agreed on search terms, the FDIC will apply the search terms to filter ESI, and export the documents captured by those terms to an internet database. The Defendants will then be given access to the internet database to search, review and annotate all ESI uploaded to the database. The $.06/page charge applies only to the subset of ESI the Defendants ultimately request to be provided outside of the database. Counsel for the FDIC represents that its proposal is functionally identical to the process that has been used in numerous other lawsuits the FDIC has instituted against former directors and officers of failed banks. Defendants in over a dozen similar lawsuits have agreed to participate in this process and to compensate the FDIC at the $.06/page rate. Counsel for the FDIC represents that the Defendants have never collectively paid more than $27,000 to receive requested ESI in any of these cases.

Under these circumstances, the FDIC argues that its request for compensation at the rate of $.06/page for making and delivering electronic copies of the ESI designated by the Defendants for production is reasonable and consistent with Fed. R. Civ. P. 34. The FDIC acknowledges that as the producing party, it is responsible for bearing the expense of searching for and responding to discovery requests. However, it relies on a line of cases holding that a party responding to discovery requests need only make requested documents available for inspection copying, and need not pay copying costs of opposing parties. Rather, as the 2006 advisory committee notes to Rule 34 state, parties are only

/ / /

required to allow other parties to inspect, copy, test or sample items, not to pay for the costs of inspecting, copying, testing or sampling the items produced.

The Defendants oppose the provision in the FDIC's proposed ESI protocol requiring them to pay a fee of $.06/page for all documents produced and delivered by the FDIC from the Relativity database. Defendants argue that these costs should be incurred by the FDIC as the party producing responsive ESI. Defendants argue that the FDIC proposal impermissively shifts costs to the requesting parties. Defendants also argue that their proposal to eliminate the $.06/page fee is fair because Defendants will incur costs developing search terms, reviewing the documents, and paying the hosting charge on the Relativity database.

Having reviewed and considered the moving and responsive papers and voluminous supporting declarations and exhibits, the court finds the FDIC proposal should be adopted. The FDIC has already incurred in excess of $791,000 in costs to locate and produce paper documents and to locate ESI to respond to Defendants' discovery requests. When the FDIC was appointed as the receiver for Silver State Bank, it collected and processed approximately 3.4 terabytes of ESI the bank possessed, and over 156,000 paper documents. *See* Declaration of Ray Rivard attached as Exhibit "3" to FDIC's submission (Dkt. #92), ¶ 18. The collection, processing and uploading of these documents cost the FDIC over $791,000. *Id.* The FDIC's proposal does not impermissibly shift the cost of producing ESI to Defendants. Rather, the FDIC has incurred significant costs and will continue to bear the costs associated with searching for responsive documents using the search terms the Defendants provide to filter ESI and export responsive documents to an internet database after performing a privilege review.

The ESI will be produced with Bates labeling, .tif images, and load files. As an alternative to the $.06/page cost, the FDIC offered to produce the ESI in native format without Bates numbering. However, counsel for Defendants rejected this suggestion as too expensive given the volume of documents involved in this case. Additionally, during oral argument counsel for Defendants argued that producing documents without Bates numbering would be confusing and a logistical nightmare.

After the documents are exported to the Relativity database, the Defendants will have access to the database to search, review and annotate all ESI uploaded to the database. Defendants will pay $.06/page for only the subset of ESI the Defendants request outside the internet database, that is,

documents the Defendants designate for delivery to them outside the database.  An outside vendor will host the Relativity database and the parties' ESI/IT consultants may communicate directly with the vendor without involvement of the attorneys.  However, no party may ask the vendor to take any action contrary to the ESI protocol.  All searches, filters, document review, coding and tagging of documents is the work product of the attorney and firm performing the work in the database and is not available to any other party.  However, upon written consent to the vendor hosting the database, a party may allow another party access to his/her searches, filters, document reviews, coding and tagging of documents. Defendants get access to the Relativity database for a modest monthly collective fee of $10/gigabyte of ESI hosted on the site.  The FDIC's IT specialist, Mr. Rivard, attests that this same protocol has been successfully used in over a dozen similar lawsuits.  Rivard Declaration, ¶10.  The Defendants in any individual such lawsuit have never collectively paid more than $27,000 to receive requested ESI. *Id.* Finally, the court agrees with those courts which have held that a party responding to discovery requests is responsible for the initial costs of reviewing and preparing paper documents and ESI for inspection and copying, but is not responsible for paying copying costs for voluminous materials.  *See*, e.g., *Clever View Inv., Ltd. v. Oshatz,* 233 F.R.D. 393, 394 (S.D.N.Y. 2006); *Obiajulu v. Rochester*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996).

    For the reasons stated,

    **IT IS ORDERED** that the proposed ESI protocol attached as Exhibit "1" to the FDIC's submission (Dkt. #92) is adopted as the ESI protocol of the court.

    Dated this 21st day of March, 2013.

Peggy A. Leen
United States Magistrate Judge