UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF SILVER STATE BANK<br><br>    Plaintiffs,<br><br>vs.<br><br>COREY L. JOHNSON; DOUGLAS E. FRENCH; GARY A. GARDNER; and TIMOTHY S. KIRBY<br><br>    Defendants, | Case No.: 2:12-CV-209-KJD-PAL<br><br><br>**ESI PROTOCOL** |

For the reasons stated in a separate written order, IT IS ORDERED that the parties and their respective counsel shall be governed by the terms and conditions concerning the production of ESI documents as follows:

1. This action relates to Silver State Bank ("Silver State" or "the Bank"). On September 5, 2008, Silver State was closed by the Nevada Financial Institutions Division, and the Federal Deposit Insurance Corporation ("FDIC") appointed as receiver of the Bank pursuant to 12 U.S.C. § 1821(c). As used herein, "FDIC" or "Plaintiff" means the FDIC in its capacity as Receiver of Silver State, and "Defendants" means Corey L. Johnson; Douglas E. French; Gary A. Gardner; and Timothy S. Kirby.

2. This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, or 37, and, insofar as it relates to ESI, this Protocol applies to Fed. R. Civ. P. 45 in all instances where the provisions of Fed. R. Civ. P. 45 are the same as, or substantially similar to, Fed. R. Civ. P. 16, 26, 33, 34, or 37. As used herein, the words "Party" or "Parties" include Plaintiff and Defendants and any person or entity that is served with a subpoena pursuant to Fed. R. Civ.

P. 45. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(c)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

    3.    In this Protocol, the following terms have the following meanings:

        A.    "Metadata" means: (i) information embedded in a Native File, including but not limited to the information identified in Exhibit A, that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

        B.    "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified. Native Files are a subset of ESI, including but not limited to the files identified in Exhibit A.

        C.    "Static Image(s)" means a representation of ESI produced by converting a Native File, including but not limited to the files identified in Exhibit A, into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the Parties or order of Court, a Static Image should be provided in 300 dpi resolution, single-page black and white CCITT Group IV Tagged Image File Format (TIFF or .TIF files). If a TIFF or .TIF file cannot be created, then the Static Image should be provided in Portable Document Format (PDF). If

load files[1] were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, Opticon, and .dat load files should be produced together with Static Images.

4. The provisions set forth in Exhibit "A" shall govern the production of ESI.

5. FDIC or its contractors are in possession of certain ESI related to Silver State. The Silver State related ESI includes the following processed databases: (1) SI Forensic Data; (2) SI Scanned Documents; (3) SI Email; and (4) various loan-related databases (SI JH Synergy Document Images 40; SI JH Synergy Document Images 40I). Subject to this Protocol and the Stipulated and Agreed Confidentiality and Non-Disclosure Agreement and Protective Order (Docket No. 62), and pursuant to an Order of the Court which shall be deemed made by approval of this Protocol, the FDIC shall produce responsive non-privileged documents from databases (1) through (4), collectively the "FDIC ESI" for inspection by the Defendants. Responsive documents withheld on the basis of privilege, work product, or similar exemption shall be logged and the log made available with the document production.

The FDIC also has another database, the network file shares database (SI File shared metadata 51 and SI Shared Folders 51) that has not been OCR'd and is not in a full text searchable form pursuant to this agreement. The FDIC will search and produce responsive non-privilege documents based on the current metadata associated with this database. Upon review of the documents produced, if the defendants determine that they require OCR searches of the fileshare database, the parties will discuss and attempt to reach an agreement regarding the OCR processing and production of this database and the costs involved in doing so. If the

---

[1] A "load file," as that term is used herein, refers to the file necessary to load data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

parties are unable to reach an agreement, the parties will have the right to address issues relating to that database with the Court. Any issues relating to the non-OCR database will not be subject to this agreement, except with respect to the procedure addressed in this paragraph, but will instead be addressed under the general rules addressing the production of electronically stored information.

6. Defendants shall collectively identify a reasonable set of search terms to run across the processed FDIC ESI. Thereafter, the Parties shall meet and confer in good faith to establish agreed search terms. If the Parties are unable to agree upon search terms after conferring in good faith, any Party may raise the issue with the Court by motion. After the Parties have agreed upon search terms, or established search terms, or established search terms with the assistance of the Court, the FDIC shall export to a Relativity database the documents captured by the agreed-upon search terms. The FDIC will then have an opportunity to conduct a review of the documents captured by the agreed-upon search terms and remove and log any documents that it believes to be privileged, subject to the work product doctrine, non-responsive, or otherwise not discoverable. Defendants shall then be granted access to the Relativity database for inspection of the documents, and may designate the documents they wish to have delivered.[2] The FDIC shall then have an opportunity to conduct a review of the documents designated for delivery and remove and log any documents that it believes to be privileged, subject to the work product doctrine, non-responsive, or otherwise not discoverable.

---

[2] Generally, during this review documents cannot be printed or downloaded. However, on a limited basis as a result of rendering viewing limitation of the document within Relativity, a corrupt file, or the file is too large to view within Relativity, Defendants' counsel may request the vendor hosting the Relativity database to permit downloading or printing of documents, in PDF format, to facilitate their review and communications with their clients, but at the end of Defendants' review, all documents so downloaded or printed and all copies thereof shall not be used in any way whatsoever and are marked "Confidential" and subject to the Protective Order on file with the Court; any such requests shall remain confidential between Defendants' counsel and the vendor and shall not de disclosed to Plaintiff or its counsel.

The FDIC will then produce responsive non-privileged documents designated for delivery. Documents withheld on the basis of privilege, work product, or similar exemption shall be logged and the log made available with the document production. The parties may make multiple requests for production of documents utilizing this process, and subsequent productions can be separately identified in the Relativity database when the party marks documents for production. Defendants shall collectively pay a monthly fee of $10 per gigabyte of ESI hosted on the Relativity database, and shall collectively pay a fee of six cents per page ($0.06/page) for all documents produced and delivered by FDIC from the Relativity database. Each Defendant shall be relieved of his or her duty to pay the monthly hosting fee upon advising the FDIC that he or she no longer requires access to the Relativity database; provided, however, that if any disputes between the parties exist that require continued use of the Relativity database, each Defendant involved in such dispute shall pay their share of the monthly hosting fee until the dispute is resolved.

       7.     If Defendants are in possession of certain ESI, including, without limitation, email and documents of various types, subject to this Protocol and the Stipulated and Agreed Confidentiality and Non-Disclosure Agreement and Protective Order (Docket No. 62), and pursuant to an Order of this Court which shall be deemed made by approval of this Protocol, (1) Defendants shall produce for inspection by the FDIC, ESI that is responsive to FDIC's document requests; (2) FDIC may designate the documents it wishes to have delivered; and (3) Defendants shall produce any non-privileged documents designated for delivery, and log any document reasonably believed not discoverable because it is privileged, subject to the work product doctrine, nonresponsive, or otherwise not discoverable. Plaintiff shall pay a monthly fee of $10 per gigabyte of ESI hosted on the Relativity database, and shall pay a fee of six cents per page ($0.06/page) for all documents produced and delivered by the Defendant from the Relativity database.

8. Producing any ESI for inspection shall be without prejudice to any claim that such ESI is protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or ground for withholding production. Upon demand, the receiving party shall return any paper copies to the producing party and delete all electronic copies of the ESI inadvertently produced pursuant to this agreement. Similarly, each party has a duty to notify a producing party if they reasonably believe that the ESI such party produced contains information that may be protected by the attorney-client privilege, work product doctrine or any other applicable privilege or ground for withholding production. To the extent that the parties disagree over the application of these principles to any such production or challenge to the privileged nature of such material, the receiving party shall not make use of the material in question until the matter is resolved by the Court.

9. The Parties consent to their respective ESI/IT consultants communicating directly with the vendor hosting the Relativity database without the involvement of the attorneys and with or without the involvement of the opposing party's ESI/IT consultant; provided, however, that neither Party shall ask the vendor to take any action in contravention of this Protocol, and provided further that the vendor shall have no authority to bind any Party.

10. All queries, searches, filters, document review, coding and tagging of documents, and other use of Relativity shall be the work product of the attorney/firm working in Relativity and shall not be available to any other party in this case. Upon written consent to the vendor hosting Relativity, a party may allow, or disallow if consent had been previously provided, another party access to his/her queries, searches, filters, document review, coding and tagging of documents, and other use(s) of Relativity

11. Nothing in this Protocol requires Plaintiff or Defendants to produce again information that was produced to the other before this agreement has been entered by the Court.

**IT IS SO ORDERED** this 21st day of March, 2013.

_____
Peggy A. Leen
United States Magistrate Judge

### Exhibit "A" to ESI Protocol

**Form of Production for Email**

All electronic email from Windows-Based ESI ("WESI") shall be produced as Static Images complete with full text extracts and the following fields of metadata:

1. Custodian (Name of Custodian from which file is being produced);
2. Other Custodians (Name(s) of custodian(s) who had exact copy of message before de-duplication);
3. Author (FROM field);
4. CC;
5. BCC;
6. Recipient (TO field);
7. MD5 Hash Value or Equivalent;
8. Date Sent (Date the email was sent);
9. Date Received (Date the file was received);
10. Time Sent (Time the email was received);
11. Time Received (Time the email was received);
12. File Type (Application used to create the file);
13. Page Count;
14. File Ext (Extension for the file);
15. PST Name;
16. Body Text (Extracted text);
17. Bates Begin (Beginning Production Number);
18. Bates End (Ending Production Number);
19. Attach Begin (Beginning Attachment Range Number);

20.     Attach End (Ending Attachment Range Number),

Electronic mail shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant and not privileged. As a general matter, subject to specific review, a message and its attachments(s) shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant, or non-responsive. To the extent the message and/or one or more attachments is privileged or non-responsive, the responsive, non-privileged documents shall be produced along with placeholders indicating whether the accompanying record was withheld as non-responsive or privileged. All Parties should confirm that their ESI is Windows-based or, if not, identify the other forms of ESI within their possession, custody and control.

**Form of Production for Other WESI**

All other WESI (including attachments to electronic mail) shall be produced in 300 dpi resolution, single-page black and white CCITT Group IV Tagged Image File Format complete with full text extracts and the following fields of Metadata:

1.      Custodian (Name of Custodian from which file is being produced);

2.      Other Custodians (Name(s) of custodian(s) who had exact copy of file before de-Duplication);

3.      Author;

4.      Doc Title (Title of file from properties);

5.      Doc Subject (Subject of file from properties);

6.      Created Date (Date the file was created);

7.      Created Time (Time the file was created);

8.      Last Modified Date (Date the file was last modified);

9.      Last Modified Time (Time the file was last modified);

10.     Last Saved By (Name of user who last saved the file);

11. File Type (Application used to create the file);

12. Doc Type;

13. Page Count;

14. File Ext (Extension for the file);

15. Path (Full path of the original location where the file was located);

16. MD5 Hash (MD5 hash value of the original native file);

17. Body Text (OCR for paper data or Extracted text for all ESI);

18. Bates Begin (Beginning Production Number);

19. Bates End (Ending Production Number);

20. Attach Begin (Beginning Attachment Range Number);

21. Attach End (Ending Attachment Range Number).

**Form of Production**

The Parties shall have the right to request that ESI be produced in native format in addition to the format set forth above when a party has a reasonable belief that the native ESI contains additional information not otherwise viewable from the production format set forth above and such additional information is reasonably calculated to lead to the discovery of admissible evidence. These documents will be accompanied with the appropriate load files indicating a cross reference to the Bates numbered Static Image.

**Load Files**

All WESI shall be produced along with an IPRO, Opticon, or Summation DII load file indicating Bates numbers and document breaks. Metadata shall be produced in Concordance DAT file format and extracted full text shall be provided in TXT file format at the document level. Non-Windows-Based Applications and Data shall be subject to the same production requirements to the extent technically and legally feasible.

**Data Culling**

The following file types shall be processed for production:

| Extension | File Type Description |
|---|---|
| cab | Windows cabinet (data will be extracted and container file discarded) |
| csv | Comma Separated Values file |
| dat | Data file |
| dbx | Outlook Express E-mail Folder |
| doc | Microsoft Word |
| docm | Microsoft Word Template |
| docx | Microsoft Word 2007 |
| dxl | Lotus Notes Message File |
| efax | Electronic fax documents |
| email | Outlook Express E-mail Message |
| eml | Outlook Express Saved Mail Message files |
| emlx | Apple Mail email message |
| htm | Web based Hypertext Markup Language File |
| html | Web based Hypertext Markup Language File |
| ics | Calendar items in Apple, Mozilla and Google |
| key | Apple Keynote presentation |
| maildb | MSN Mail file |
| mbox | Unix MAC file mailbox |
| mlm | Novell GroupWise saved email message file |
| mdb | Microsoft Access Database |
| mht | Multipurpose Internet Mail Extension |
| mim | Multipurpose Internet Mail Extension |
| mpp | Microsoft Project |

| Extension | Description |
|---|---|
| msg | Outlook Mail Message |
| nsf | Lotus Notes (data will be extracted and container file discarded) |
| ost | Microsoft Outlook Offline folder file (data will be converted, extracted, and container file discarded) |
| pbx | Outlook Express message folder file |
| pdf | Portable Document Format File |
| pop | PopMail messages file |
| pps | Microsoft PowerPoint Show file |
| ppt | Microsoft PowerPoint file |
| pptx | Microsoft PowerPoint 2007 |
| pst | Microsoft Outlook personal folder file (data will be extracted and container file discarded) |
| rar | WinRAR compressed archive (data will be extracted and container file discarded) |
| rtf | Rich Text Format |
| tif | Tagged Image Format |
| txt | Plain Text File |
| wks | Works Spreadsheet |
| wpd | Corel WordPerfect |
| wps | Microsoft Works Word Processor Document |
| xls | Microsoft Excel |
| xlsx | Microsoft Excel 2007 |
| xml | Extensible Markup Language File |
| xps | XML Paper Specification |
| zip | Zipped Compressed File (data will be extracted and container file discarded) |
| zipx | Extended Zipped Compressed File (data will be extracted and container file discarded) |

**Duplicates**

ESI will be de-duplicated across the entire set of responsive ESI before export to the Relativity database.  In the case of e-mail, the original sender's version of the e-mail will be the version produced.  In the case of other documents, to the extent feasible, the version created by the author of the documents will be produced.

**Color**

Where the original of a produced document is in color, and color is material to the interpretation of the document, the receiving party may request that the document be produced in color (whether electronic or paper).  Otherwise, production will be in 300 dpi resolution, single-page black and white CCITT Group IV Tagged Image File Format.

**Physical Documents**

Documents that exist solely in hard-copy format shall be converted and produced following the same protocols outlined above.  The metadata shall indicate document breaks and identify the custodian from whom the document was collected.  The ".tiff" files shall be subject to an Optical Character Recognition ("OCR") process.