**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF SILVER STATE BANK,<br><br>Plaintiff,<br><br>v.<br><br>COREY L. JOHNSON, *et al*.,<br><br>Defendants, | Case No. 2:12-CV-00209-KJD-PAL<br><br>**ORDER** |

Before the Court is the Motion for Partial Summary Judgment (#153) of Federal Deposit Insurance Corporation, as Receiver of Silver State Bank, ("FDIC-R"). Defendant Douglas E. French ("French") filed a response in opposition (#173), to which Defendant Gary A. Gardner ("Gardner") joined (#177). Gardner filed a response in opposition (#176), to which French and Defendant Corey L. Johnson ("Johnson") (#188, #192) joined. Johnson filed a response in opposition (#180), to which French and Gardner (#189, #190) joined. The FDIC-R filed a reply (#205).

The FDIC-R raises four issues in its motion for partial summary judgment (#153). One issue is whether the FDIC-R has standing to recover losses to the Deposit Insurance Fund. This issue was addressed by a previous court order (#215) granting Defendants' motion for partial summary judgment. Two additional issues are whether the FDIC-R's claims are barred under the Extender Statute and whether the economy is an intervening or superseding cause. The Court will not address these two issues in this order; they will be addressed in future orders. The issue

the Court will address in this order is what affirmative defenses, if any, Defendants may assert against the FDIC-R. Thus, the FDIC-R's supplemental authority (#211, #212) are irrelevant to the instant order.

I. Background

Silver State Bank ("SSB") was a financial institution with offices in several states (#121). In 2008, SSB was closed and the FDIC-R was appointed receiver (#121). Afterwards, the FDIC-R filed a Complaint (#1) and an Amended Complaint (#121). The Amended Complaint alleges that Defendants, as SSB's former officers, are personally liable for the damages caused by their gross negligence and breach of fiduciary duties (#121). Johnson (#148), French (#125), and Gardner (#126) (collectively, "Defendants") answered the FDIC-R's Amended Complaint and asserted various affirmative defenses.

The FDIC-R filed its Motion for Partial Summary Judgment (#153) seeking judgment as to Johnson's seventh, eighth, ninth, thirteenth, sixteenth, and eighteenth affirmative defenses; French's seventh, eighth, and tenth affirmative defenses; and Gardner's second, thirteenth, seventeenth, eighteenth, and nineteenth affirmative defenses.

II. Legal Standards

A. Summary Judgment

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment may be granted if the pleadings, depositions, affidavits, and other materials of the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Uncorroborated and self-serving testimony, without more, will not create a genuine issue of material fact. See Villiarimo v. Aloha

1    Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory or speculative testimony is also

2    insufficient to raise a genuine issue of fact. Anheuser Busch, Inc. v. Natural Beverage Distribs.,

3    69 F.3d 337, 345 (9th Cir. 1995).

4    　　　　The moving party bears the initial burden of showing the absence of a genuine issue of

5    material fact. See Celotex, 477 U.S. at 323. Once that burden is met, the nonmoving party then

6    has the burden of setting forth specific facts demonstrating that a genuine issue exists. See

7    Matsushita, 475 U.S. at 587; FED. R. CIV. P. 56(e). If the nonmoving party fails to make a

8    sufficient showing of an essential element for which it bears the burden of proof, the moving

9    party is entitled to summary judgment. See Celotex, 477 U.S. at 322-23.

10   　　　　B. Affirmative Defenses and the FDIC

11   　　　　The FDIC was created to promote stability and confidence in the nation's banking

12   system. Bullion Services, Inc. v. Valley State Bank, 50 F.3d 705, 708 (9th Cir. 1995). To achieve

13   these goals, Congress created the FDIC-Corporate ("FDIC-C") and the FDIC-R. Id. Courts have

14   been careful to keep the responsibilities, rights, and liabilities of these two entities legally

15   separate. Id. at 709. The FDIC-C's primary responsibilities are to insure bank deposits and

16   administer the Deposit Insurance Fund ("DIF"). Id. at 708. The DIF is a pool of assets used to

17   guarantee the safety of federally insured deposits. Id. The FDIC-R's primary responsibility, on

18   the other hand, is to act as a receiver for an insolvent financial institution. Id.

19   　　　　Initially, many courts determined that the FDIC-R's rights and defenses were governed

20   by federal law. See e.g. Fed. Deposit Ins. Corp. v. Mmahat, 907 F.2d 546, 550 (5th Cir. 1990)

21   (holding that federal law governs the rights of the FDIC); FDIC v. Gulf Life Ins. Co., 737 F.2d

22   1513, 1517 (11th Cir.1984) (holding that federal rule governs the defenses against the FDIC).

23   This led to the judicial creation of federal rules. See Gulf Life, 737 F.2d at 1517-20 (adopting a

24   federal rule that defeats certain affirmative defenses). However, the U.S. Supreme Court later

25   held that (1) state law, rather than federal law, governs the elements of the FDIC-R's cause of

26   action; (2) "any defense good against the original party is good against the receiver"; and (3) the

1  judicial creation of a special federal rule is not justified absent a significant conflict between
2  federal policy and the use of state law.  O'Melveny & Myers v. F.D.I.C., 512 U.S. 79, 83-87
3  (1994).

4  On its face, O'Melveny's broad language suggests that a defendant may raise any
5  affirmative defense against the FDIC-R that it could have raised had the failed financial
6  institution been the party pursuing litigation. However, O'Melveny does not detail how effective
7  certain affirmative defenses may be against the FDIC-R. Many courts recognize this and have
8  drawn different conclusions as to how O'Melveny impacts a defendant's affirmative defenses.
9  See, e.g., Grant Thornton, LLP v. F.D.I.C., 535 F. Supp. 2d 676, 724 (S.D.W. Va. 2007) (stating
10 that O'Melveny did not address the issue of pre-receivership conduct by regulators); Resolution
11 Trust Corp. v. Heiserman, No. CIV. A. 93-B-944, 1994 WL 907409 (D. Colo. 1994) (stating that
12 the sole affirmative defense addressed in O'Melveny was the defense of imputed knowledge).

13 A substantial number of courts have barred defendants from asserting certain affirmative
14 defenses. See Grant, 535 F. Supp. 2d at 722. These courts are reluctant to allow a defendant to
15 assert affirmative defenses that rely on the discretionary actions of the FDIC or the pre-
16 receivership actions of regulators. See, e.g., F.D.I.C. v. Oldenburg, 38 F.3d 1119, 1122 (10th Cir.
17 1994) (holding that former officers of a financial institution may not assert affirmative defenses
18 of contributory negligence and mitigation of damages against the FDIC-R); Grant, 535 F. Supp.
19 2d at 722 (holding that regulators' failure to do anything in their regulatory capacity cannot
20 defeat the FDIC's claim). The reasoning of these courts, however, is quite varied. See, e.g.,
21 F.D.I.C. v. Collins, 920 F. Supp. 30, 35 (D. Conn. 1996) (stating that courts should focus on the
22 alleged wrongdoers' actions, not the actions taken by the FDIC or other regulatory agencies);
23 Fed. Deposit Ins. Corp. v. Ornstein, 73 F. Supp. 2d 277, 281 (E.D.N.Y. 1999) (stating that the
24 FDIC must be able to perform its duties without fear of judicial second-guessing); FDIC v.
25 Raffa, 935 F.Supp. 119, 124 (D.Conn.1995) (stating that the FDIC owes no duty to the former
26 officers of a financial institution).

1    Although these courts give different explanations for why certain affirmative defenses are
2    barred against the FDIC, their central underlying concern is best articulated by a Maryland
3    district court:

> [N]othing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for defendants' wrongdoing in the first instance.

Fed. Sav. and Loan Ins. Corp. v. Roy, 1988 WL 96570 (D. Md. 1988). The Roy court has been quoted many times,[1] even after O'Melveny,[2] to provide a foundation for barring affirmative defenses that rely on the FDIC's conduct.

Despite these concerns, there are other courts that have allowed a defendant to assert affirmative defenses against the FDIC-R. These courts believe that O'Melveny did away with the judicially created federal rules that modified FIRREA. See, e.g., Resolution Trust Corp. v. Liebert, 871 F. Supp. 370, 373 (C.D. Cal. 1994) (holding that O'Melveny did away with the federal "no-duty" rule that barred a defendant's affirmative defenses); FDIC v. Gladstone, 44 F.Supp.2d 81, 86-87 (D. Mass.1999) (holding that O'Melveny generally did away with the federal common law rule barring a defendant's affirmative defenses). These courts also believe – in harmony with O'Melveny – that judicially creating a federal rule is highly disfavored, and will only be acceptable if there is a significant conflict between federal policy and the use of state law. See e.g. Gladstone, 44 F.Supp.2d at 87 (stating that the court will only find a conflict between federal policy and the use of state law if it is clearly significant). Consequently, these courts often allow a defendant to assert an affirmative defense against the FDIC, unless the affirmative defense is barred under state law. See e.g. Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co., 93 F. Supp. 2d 300, 307-9, 310 (W.D.N.Y. 2000) (allowing a defendant to

---

[1] See, e.g., F.D.I.C. v. Bierman, 2 F.3d 1424, 1438 (7th Cir. 1993); Fed. Deposit Ins. Corp. v. Baker, 739 F. Supp. 1401, 1407 (C.D. Cal. 1990).

[2] See, e.g., F.D.I.C. v. Oldenburg, 38 F.3d at 1121; Raffa, 935 F. Supp. at 124; Ornstein, 73 F. Supp. 2d at 282.

1  assert failure to mitigate and contributory negligence affirmative defenses); Gladstone, 44 F.
2  Supp. 2d at 90 (holding that a defendant could not assert the affirmative defense of latches
3  because it was barred under state law).
4        Thus, there is a clear division among the courts as to whether a defendant can assert
5  certain affirmative defenses against the FDIC-R. Before O'Melveny, a clear majority of courts
6  held that a defendant could not assert several affirmative defenses against the FDIC-R. See
7  Resolution Trust Corp. v. Liebert, 871 F. Supp. 370, 372-73 (C.D. Cal. 1994) (stating that a
8  heavy majority of courts hold that the 'no duty' rule prevents defendants from asserting certain
9  affirmative defenses against the FDIC). However, this Court cannot find a clear majority after
10 O'Melveny. With this understanding of the issue, the Court turns to the FDIC-R's arguments.
11 III. Analysis
12       The FDIC-R's motion for partial summary judgment is insufficient because it fails to
13 state with particularity the FDIC-R's grounds for seeking summary judgment. See FED. R. CIV.
14 P. 7(b)(1)(B). Instead of showing the Court why, as a matter of law, each of Defendants' fourteen
15 affirmative defenses should be barred, the FDIC-R groups Defendants' affirmative defenses into
16 an ambiguous mass and asserts that it is entitled to summary judgment. Furthermore, the FDIC-
17 R's arguments are vague, unorganized, and circumambulatory. The Court would be justified in
18 denying the FDIC-R's motion under Federal Rule of Civil Procedure 7(b). However, in the
19 interest of judicial efficiency, the Court will address the substantive issue raised in the FDIC-R's
20 motion.
21       The issue before the Court is whether Defendants' affirmative defenses must fail. The
22 FDIC-R argues that Defendants cannot assert certain affirmative defenses because (1) the FDIC
23 operates in two legally distinct capacities, (2) bank examiners and regulators owe Defendants no
24 duty, and (3) the Federal Tort Claims Act ("FTCA") bars affirmative defenses that are based on
25 the FDIC's discretionary actions.
26 ///

1          A. The FDIC is a Distinct Legal Entity

2          The FDIC-R's first argument is that Defendants' affirmative defenses are barred because

3    they fail to distinguish the FDIC's different legal capacities. However, the FDIC-R's argument

4    fails because it does not show how this principle of legal distinction bars Defendants' affirmative

5    defenses under Nevada law. Furthermore, Nevada law suggests that a defendant can assert an

6    affirmative defense that relies on the actions of a party that is legally distinct from the plaintiff.

7          In its argument, the FDIC-R states that it is a distinct legal entity from its counterpart, the

8    FDIC-C, and performs different functions, protects different interests, and pursues different legal

9    strategies. The FDIC-R clarifies that it cannot be held responsible for the FDIC-C's actions. The

10   FDIC-R then argues that Defendants' affirmative defenses must fail because they seek to shift

11   the blame for SSB's losses onto the FDIC-C and other bank regulators.

12         Nevada law governs whether Defendants' affirmative defenses are barred. See

13   O'Melveny, 512 U.S. at 86. The FDIC-R has not provided (and the Court has not found) any

14   Nevada law that shields a plaintiff from a defendant's affirmative defenses on this principle of

15   legal distinction. In the absence of controlling authority, this Court must predict how the

16   Supreme Court of Nevada would resolve this issue. Dimidowich v. Bell & Howell, 803 F.2d

17   1473, 1482 (9th Cir.1986).

18         Under Nevada law, an affirmative defense consists of new facts and arguments that, if

19   true, will defeat a plaintiff's claim, even if all allegations in the complaint are true. Schettler v.

20   RalRon Capital Corp., 275 P.3d 933, 940 (Nev. 2012). Nevada law allows a defendant to raise an

21   affirmative defense that relies on the actions of a party that is legally distinct from a plaintiff.

22   See, e.g., Banks ex rel. Banks v. Sunrise Hosp., 102 P.3d 52, 67 (Nev. 2004) (holding that

23   Nevada's tortfeaser contribution and comparative negligence statutes did not prohibit a

24   defendant from attempting to establish that the responsibility for a plaintiff's injuries rests with

25   nonparties). Not all affirmative defenses are "true" affirmative defenses. See Clark County Sch.

26   Dist. v. Richardson Const., Inc., 168 P.3d 87, 96-97 (Nev. 2007) (holding that, in a tort action, a

defense asserting third-party culpability was not a true affirmative defense because it merely sought to negate an essential element of the plaintiff's claims). However, even if a defense is not a true affirmative defense, a defendant may still assert it to negate an essential element of a plaintiff's claim. See Id.

In the present case, FDIC-R's first argument reasons that, because the FDIC-R did not perform the actions alleged by several of Defendants' affirmative defenses, they should be dismissed. This is not supported by Nevada law. Nevada law allows Defendants to attempt to establish that the fault for the FDIC-R's injury lies with nonparties to the present case. See, Banks, 102 P.3d at 67. Several of Defendants' affirmative defenses, such as Defendants' intervening and superseding cause defenses, seek to establish that the FDIC-R's damages were caused by parties other than Defendants. The Court cannot, therefore, grant the FDIC-R's motion simply because Defendants' have alleged affirmative defenses that rely on the actions of a third party.

Furthermore, Nevada law allows a defendant to assert a defense that negates an essential element of a plaintiff's claim. See Clark County, 168 P.3d at 96-97. In the present case, the FDIC-R brought a cause of action for gross negligence against Defendants (#121). Thus, to succeed in that cause of action, the FDIC-R must satisfy Nevada's requirements for gross negligence. See 12 U.S.C. 1821(k). The Supreme Court of Nevada defines gross negligence as follows:

> Gross negligence is equivalent to the failure to exercise even a slight degree of care. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected.

Bearden v. City of Boulder City, 507 P.2d 1034, 1035–36 (Nev. 1973). Defendants raised several affirmative defenses in response to the FDIC-R's gross negligence claim, including reasonable

1  reliance, waiver, and comparative negligence. These defenses arguably seek to negate essential

2  elements of the FDIC-R's claims by showing that Defendants did, in fact, exercise at least some

3  care. This is permitted under Nevada law. See Clark County, 168 P.3d at 96-97. The Court,

4  therefore, rejects the FDIC-R's first argument.

5          B. Bank Regulators' Duty to Defendants

6          The FDIC-R's second argument is that Defendants' affirmative defenses are barred under

7  the "no-duty" rule. The FDIC-R's argument fails because Nevada has not adopted the "no-duty"

8  rule. Furthermore, the "no-duty" rule is a judicially created federal rule, which is generally

9  prohibited under O'Melveny.

10          The FDIC-R's argument makes three assertions: (1) the Supreme Court of Nevada

11  adopted the "no-duty" rule, (2) the federal "no-duty" rule survived O'Melveny, and (3)

12  "O'Melveny has no application when the conduct at issue is that of a federal actor such as the

13  FDIC-R" (#153, p. 23).

14          The "no-duty" rule, as adopted by federal courts, is a judicially created federal rule that

15  bars affirmative defenses that rely on the FDIC's actions. See Bierman, 2 F.3d at 1438. The

16  policy behind the "no-duty" rule is that the former officers of a failed financial institution should

17  be responsible for the FDIC-R's mistakes when it steps into the shoes of a failed financial

18  institution. See Id. As previously mentioned, the legal issue of whether the "no-duty" rule

19  survived O'Melveny is complex and disputed. F.D.I.C. v. Spangler, 10-CV-4288, 2012 WL

20  5558941 (N.D. Ill. 2012). The courts who believe the "no-duty" rule survived O'Melveny

21  typically hold that O'Melveny is limited to defenses arising from the pre-receivership conduct of

22  private individuals. Liebert, 871 F. Supp. at 373. The remaining courts feel that the "no-duty"

23  rule is clearly a judicially created federal rule, which O'Melveny abolished. Id.

24          In its first assertion, the FDIC-R contends that the Supreme Court of Nevada adopted the

25  "no-duty" rule. The FDIC-R's assertion relies on Scott v. Dept. of Com., a Supreme Court of

26  Nevada case. The FDIC-R's assertion, however, is incorrect. The Supreme Court of Nevada did

not adopt the "no-duty" rule in Scott. Instead, it held that: "when a governmental duty runs to the public, no private cause of action is created by breach of such duty." Scott v. Dept. of Com., 763 P.2d 341, 344 (Nev. 1988).  This holding does not adopt the "no-duty" rule; it merely prevents a party from suing the government when it has a duty to the public. See Id. Furthermore, the Supreme Court of Nevada did not address the "no-duty" rule, or even the issue of affirmative defenses in Scott. See Id. The FDIC-R's argument, therefore, has no merit.

Additionally, a court does not automatically adopt the federal "no-duty" rule whenever it holds that a party does not have a legal duty towards another party. Compare Bierman, 2 F.3d at 1438-40 (explaining that the "no-duty" rule is a federal rule where courts, as a matter of public policy, bar affirmative defenses, such as negligence and failure to mitigate) with Scott, 763 P.2d at 344 (explaining a plaintiff could not bring a cause of action against the state because state regulators owe no duty to protect individual investors). When a court holds that a defendant does not have a duty towards a plaintiff, that holding typically bars the plaintiff from bringing a claim against the defendant for that specific issue; it does not affect the defendant's affirmative defenses. See, e.g., Scott, 763 P.2d at 342-44. In contrast, the federal "no-duty" rule does not apply to claims. See Bierman, 2 F.3d at 1438-40. Instead, it nullifies a defendant's affirmative defenses against the FDIC-R. Id. Thus, if the Supreme Court of Nevada wished to adopt the federal "no-duty" rule in Scott, it would need to do more than merely hold that one party owes no duty to another. The Supreme Court of Nevada did not do so in Scott. See Scott, 763 P.2d at 342-45.

Furthermore, if the Court were to accept the FDIC-R's argument, it would lead to absurd results. For example, under the FDIC-R's reasoning, if a prison official decided to sue an inmate, the inmate would be unable to assert several affirmative defenses simply because the prison official does not owe the former inmate a duty. See Butler ex rel. Biller v. Bayer, 168 P.3d 1055, 1067 (Nev. 2007) (holding that a prison official does not have a duty to warn an inmate of an unforeseen intentional attack). This would inappropriately cause many defendants to lose on the

10

merits of claims brought against them. The Court, therefore, rejects the FDIC-R's assertion that Scott adopted the federal "no-duty" rule.[3]

Turning to the second assertion, the FDIC-R argues that the federal "no-duty" rule survived O'Melveny. The FDIC-R's argument relies primarily on the holdings of several district courts outside of this circuit. E.g., Raffa, 935 F.Supp. at 124 (holding the FDIC owes no duty to bank's officers and directors).

Federal courts adopted the "no-duty" rule to address their concerns that certain affirmative defenses inappropriately shifted to the public the cost of the FDIC's mistakes. See Bierman, 2 F.3d at 1438-40. The Supreme Court, however, held that the judicial creation of federal common-law rules altered FIRREA, and were generally not justified. O'Melveny, 512 U.S. at 87. It clarified that judicial creation of these exceptions was only appropriate if there exists a significant conflict between federal policy and the use of state law. Id. Generic federal interests, such as the interest of uniformity, are insufficient to meet this standard. Id. at 88.

It is clear to the Court that the "no-duty" rule is a federal common-law rule that alters FIRREA. Thus, its judicial creation is generally not justified. Id. at 87. Additionally, the FDIC-R has failed to identify (and the Court has not found) a significant conflict that would justify the judicial creation of the "no-duty" rule. Therefore, the Court rejects the FDIC-R's second assertion.

In its third assertion, the FDIC-R argues: "O'Melveny has no application when the conduct at issue is that of a federal actor such as the FDIC-R" (#153, p. 23). However, the FDIC-R's argument does not have merit.

The FDIC-R's argument is a conclusory statement, insufficiently supported by law or fact. Specifically, it contradicts O'Melveny. The U.S. Supreme Court held that O'Melveny

---

[3] The FDIC-R also argues the Ninth Circuit Court adopted the "no-duty" rule in Harmsen v. Smith. This argument is flawed for the exact same reason. In Harmsen, the Ninth Circuit Court held that the Comptroller owed no duty to the bank or its shareholders. Harmsen v. Smith, 586 F.2d 156, 157 (9th Cir. 1978). However, the Ninth Circuit Court only held that this barred the directors from bringing a claim for relief against Comptroller. See Id. 156-58. It did not address whether this principle barred a defendant's affirmative defenses. Id.

governs the FDIC-R's rights and liabilities: "The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred." O'Melveny, 512 U.S. at 88. Therefore, the Court rejects the FDIC-R's third assertion.

The FDIC-R has not presented persuasive argument, analysis, or authority showing that the "no-duty" rule applies to the current case. The Court, therefore, rejects the FDIC-R's request for summary judgment based on the "no-duty" rule.

### C. The Federal Tort Claims Act

The FDIC-R's third argument is that the FTCA bars Defendants' affirmative defenses. However, the FDIC-R's argument fails because it does identify any authoritative Nevada law that supports its assertion. Additionally, sovereign immunity and the FTCA do not, by themselves, bar a defendant's affirmative defenses. Finally, if the Court were to apply the FTCA to affirmative defenses, it would judicially create a federal rule and alter FIRREA, which is discouraged under O'Melveny.

In its third argument, the FDIC-R argues that Defendants cannot assert affirmative defenses that rely on the FDIC's alleged acts or omissions. Specifically, the FDIC-R argues that the FTCA discretionary function exception bars Defendants' affirmative defenses because they rely on the FDIC-R's discretionary actions.

As stated previously, Nevada law governs a defendant's affirmative defense against the FDIC-R. See O'Melveny, 512 U.S. at 86. The FDIC-R does not cite (and the Court has not found) any controlling Nevada law that bars a defendant's affirmative defense under the FTCA discretionary function exception. In the absence of controlling state law, the Court must predict how the Supreme Court of Nevada would determine this issue. Dimidowich, 803 F.2d at 1482.

The FTCA waives sovereign immunity for the negligent or wrongful acts of Government employees. Gaubert, 499 U.S. at 319 n.4. Sovereign immunity means that "that the United States

may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." U.S. v. Mitchell, 463 U.S. 206, 212 (1983). The FTCA is subject to several exceptions. See 28 U.S.C. § 2680. One of these exceptions, the discretionary function exception, protects federal agencies from "[a]ny claim based upon…performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency…." 28 U.S.C. § 2680(a). In essence, the discretionary function exception presumes that an agency's acts are grounded in governmental policy when a statute, regulation, or agency guideline allows the agency to exercise discretion. See Gaubert, 499 U.S. at 324. The purpose of this exception is to prevent judicial second-guessing of legislative and administrative decisions through the medium of an action in tort. Id. at 323. If an agency wishes to invoke discretionary function exception, it bears the burden of proving the exception applies. See Prescott v. U.S., 973 F.2d 696, 702 (9th Cir. 1992).

Courts are divided as to whether this exception applies to affirmative defenses. Compare Massachusetts Mut. Life Ins. Co., 93 F. Supp. 2d at 307 (holding that FTCA's discretionary function exception has no place in the court's analysis of the defendant's affirmative defenses) with FDIC v. Stanley, 770 F. Supp. 1281, 1309 (N.D.MD. 1991) (holding that the FTCA's discretionary function exception protects the FDIC-R actions when it acts as receiver of a failed bank). Courts that apply the discretionary function exception to affirmative defenses feel that barring affirmative defenses against the FDIC-R furthers the policy behind the FTCA. Bierman, 2 F.3d at 1440-41. Courts that decline to apply the discretionary function exception to affirmative defenses feel that the language of the statute limits the discretionary function exception to claims. See Massachusetts Mut. Life Ins. Co., 93 F. Supp. 2d at 307.

The issue before the Court in this case is similar to the issue before the Supreme Court of Nevada in Schettler v. RalRon Capital Corp. In Schettler, the Supreme Court of Nevada determined whether a FIRREA's jurisdictional bar applied to claims, defenses, and affirmative defenses, or just to claims. Schettler, 275 P.3d at 936. The Supreme Court of Nevada held that,

because FIRREA's jurisdictional bar did not contain the term "defense," "affirmative defense," or "proposed affirmative defense" in its statutory language, FIRREA's jurisdictional bar did not apply to defenses or affirmative defenses. See Id. at 939-40. Schettler's holding suggests to this Court that a statute's plain language is extremely important to the Supreme Court of Nevada. It also suggests that the Supreme Court of Nevada will not apply a statute to a defense or an affirmative defense if the statute's language only applies to a claim.

With this in mind, the Court turns to the language of the FTCA discretionary function exception, which states:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
>
> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The discretionary function exception expressly applies to "any claim" and does not include the term "defense," "affirmative defense," or "proposed affirmative defense". As previously mentioned, the distinction between claims and defenses in the language of a statute appears to be important to the Supreme Court of Nevada. See Schettler 275 P.3d at 939-40. Therefore, the Court does not believe that the Supreme Court of Nevada would bar Defendants' affirmative defenses under the FTCA discretionary function exception.[4]

Furthermore, at its root, the discretionary function exception simply withdraws the consent necessary to overcome sovereign immunity and sue the Government. See 28 U.S.C. § 2680. Sovereign immunity, when applied, is a defense against suit. See Mitchell, 463 U.S. at

---

[4] Similarly, the Court cannot bar Defendants' affirmative defenses under the state equivalent of the FTCA, N.R.S. 41.032. N.R.S. 41.032 expressly applies to "actions" and does not include the term "defense," "affirmative defense," or "proposed affirmative defense". See N.R.S. 41.032.

212. It is not a defense against affirmative defenses. Consequently, if the discretionary function exception were to apply in the present case, it would only bar a cause of action against the FDIC-R; it would not protect the FDIC-R from a defendant's affirmative defenses.

What the FDIC-R truly desires is for the Court to judicially create a federal rule to protect the FDIC-R from Defendants' affirmative defenses. This federal rule (which the Court will call the "discretionary function" rule) would protect the FDIC-R from affirmative defenses that rely on the FDIC's discretionary actions. However, the judicial creation of federal rules is strongly discouraged by the Supreme Court. O'Melveny, 512 U.S. at 87. Furthermore, the FDIC-R has identified *no* significant conflict with an identifiable federal policy or interest that would persuade the Court to judicially create a "discretionary function" rule. Consequently, the Court cannot judicially create the "discretionary function" rule the FDIC-R desires.

The FDIC-R's argument has not identified any applicable Nevada law. Additionally, Nevada case law suggests that the Supreme Court of Nevada would not apply the FTCA discretionary function exception to the present case. Finally, the FDIC-R's argument would require the Court to judicially create the "discretionary function" rule without fulfilling the requirements laid out by the Supreme Court. This Court, therefore, rejects the FDIC-R's third argument.

i. The "Discretionary Function" Rule in Other Circuits

The Court notes that two circuit courts adopted the "discretionary function" rule post-O'Melveny. See F.D.I.C. v. Mijalis, 15 F.3d 1314, 1324 (5th Cir. 1994) (holding that the FTCA discretionary function exception bars the affirmative defense of failure to mitigate damages against the FDIC); Oldenburg, 38 F.3d at 1121-22 (holding that the FTCA discretionary function exception bars the affirmative defenses of contributory negligence and mitigation of damages against the FDIC). This Court, however, respectfully disagrees with the holdings of the Fifth and Tenth circuit courts because they judicially created a federal rule without fulfilling the requirements set out by the U.S. Supreme Court in O'Melveny.

15

1  When they adopted the "discretionary function" rule, the Fifth and Tenth Circuit
2  courts relied almost exclusively on the Seventh Circuit's reasoning in Bierman. See Mijalis, 15
3  F.3d at 1324; Oldenburg, 38 F.3d at 1121. In Bierman, the Seventh Circuit addressed the issue of
4  whether affirmative defenses could be asserted against the FDIC-R. Bierman, 2 F.3d at 1438-41.
5  The Seventh Circuit noted that Congress created the FDIC to promote stability and confidence in
6  the nation's banking system. Id. at 1438. It also noted the policy concerns of several district
7  courts that barred affirmative defenses against the FDIC. See Id. at 1438-39. The Seventh Circuit
8  stated:

> Congress has made it clear that the FDIC is to exercise its discretion in choosing a course of action in its efforts to replenish the fund. At the time of these transactions, the governing statute provided that "[t]he Corporation, in its discretion, may ... purchase and liquidate or sell any part of the assets of an insured bank." 12 U.S.C. § 1823(d) (1988). Therefore, when the FDIC acts to replenish the insurance fund through the disposition of assets of the failed bank, including the right of action against the officers and directors, it has no duty first to attempt to mitigate the damages attributed to those individuals by seeking other, and perhaps less sure, avenues of relief.

15  Id. at 1439-40. The Seventh Circuit then decided to bar the defendant's affirmative defenses
16  under the FTCA discretionary function exception. See Id. at 1439-41. In making its decision, the
17  Seventh Circuit acknowledged that "the decision of the FDIC to initiate a suit . . . is not precisely
18  the same function as that at issue in Gaubert." Id. at 1440. However, the Seventh Circuit applied
19  the FTCA discretionary function exception because it felt that it was consonant with the purpose
20  of the FTCA. Id. at 1440-41.
21  This Court respectfully disagrees with the Seventh Circuit's decision in Bierman,
22  and consequently the Fifth and Tenth Circuit courts, because the Bierman court judicially created
23  a federal rule, which was later overruled by the Supreme Court in O'Melveny. In O'Melveny, the
24  Supreme Court held that the judicial creation of a federal rule was not justified unless there is a
25  "significant conflict between some federal policy or interest and the use of state law."
26  O'Melveny, 512 U.S. at 87. In Bierman, however, the Seventh Circuit did not identify a

1   significant conflict between federal policy and the use of state law when it judicially created the

2   "discretionary function" rule. See Bierman, 2 F.3d at 1438-41. Instead, it analyzed the policies,

3   rules, and concerns of other district courts. See Id. A district court's policies, rules, and concerns,

4   however, do not justify the judicial creation of the "discretionary function" rule under

5   O'Melveny. See O'Melveny, 512 U.S. at 87. Therefore, this Court respectfully disagrees with

6   the reasoning of the Seventh, Fifth, and Tenth Circuits.

7       Furthermore, in the present case, the FDIC-R has not identified (and this Court

8   has not found) a significant conflict between federal policy and the use of Nevada law.

9   Therefore, this Court would not be justified in creating or adopting the "discretionary function"

10   rule to bar Defendants' affirmative defenses.

11   IV. Conclusion

12       Accordingly, it is **HEREBY ORDERED** that Plaintiff Federal Deposit Insurance

13   Corporation's, as Receiver of Silver State Bank, Motion for Partial Summary Judgment (#153) is

14   **DENIED IN PART** as to Defendants' affirmative defenses;

15       **IT IS FURTHER ORDERED** that Defendants Johnson's (#192), French's (#188,

16   #189), and Gardner's (#177, #190) Joinders are **GRANTED**.

17       DATED this 5th day of August 2014.

_____
Kent J. Dawson
United States District Judge